**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**Salvatore CASTELLANA a/k/a Sam**
**Castellana, Plaintiff-Appellee.**

**No. 73-2259.**

United States Court of Appeals,
Fifth Circuit.

Jan. 17, 1974.

Rehearing En Banc Granted
March 1, 1974.

---

John L. Briggs, U. S. Atty., Harvey E. Schlesinger, Asst. U. S. Atty., Jacksonville, Fla., Claude H. Tison, Asst. U. S. Atty., Tampa, Fla., for plaintiff-appellant.

Henry Gonzales, Thomas J. Hanlon, Tampa, Fla., for plaintiff-appellee.

Before THORNBERRY, GOLDBERG and INGRAHAM, Circuit Judges.

THORNBERRY, Circuit Judge:

Castellana was indicted for being a felon in possession of a firearm that has moved in interstate commerce, a violation of 18 U.S.C. App. § 1202(a). He made motions to suppress four handguns and certain statements on the grounds they were obtained in violation of his rights under the Fourth and Fifth Amendments. The Government here appeals the trial court's decision granting these motions, and we affirm.

### I.

The F.B.I. suspected that Castellana was conducting gambling activities at his store, the Albany Drive In Market in Tampa, Florida. To investigate these suspicions agents obtained two valid search warrants, one for the premises and one for Castellana's person. At 6:14 p.m. on August 5, 1972, twenty armed F.B.I. agents converged on the market to execute their search warrants. Apparently unwelcome, the agents broke in the door to make their entry.

Special Agent Smith asked Castellana to accompany him to the store's back room, a distance of about forty feet. When they arrived in the back room Castellana placed himself about four feet from his desk, and Smith began to read him the warrant. All was proceeding smoothly until Agent Arwine walked in and, for reasons known only to himself, abruptly asked Castellana: "Do you have any weapons within reach?" The accused replied, "Yes, down there," indicating the lower desk drawer. Upon opening the drawer Arwine found four handguns and asked Castellana, "Where did you get them?" Castellana responded, "I took them in on a loan." Smith then finished reading the search warrant and advised Castellana of his *Miranda* rights.

This unusual factual situation requires us to answer two questions. Are Castellana's statements inadmissible products of custodial interrogation not preceded by *Miranda* warnings? If so, are the guns inadmissible products of the unlawful interrogation?

### II.

*Miranda* warnings must precede "custodial interrogation." Miranda v. Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. To justify the absence of warnings here the Government claims first that Castellana was not in custody, and second that Agent Arwine's questions did not constitute interrogation.

"The *Miranda* opinion declared that the warnings were required when the person being interrogated was 'in custody at the station *or otherwise deprived of his freedom of action in any significant way.*'" Orozco v. Texas, 1969, 394 U.S. 324, 327, 89 S.Ct. 1095, 1097, 22 L.Ed.2d 311. The warnings' purpose is to dispel the compulsion inherent in custodial surroundings. In determining whether there has been custodial interrogation our Circuit uses a case-by-case approach. United States v. Montos, 5th Cir. 1970, 421 F.2d 215, cert. denied, 397 U.S. 1022, 90 S.Ct.

1262, 25 L.Ed.2d 532. In each case the court must "determine whether there were present the compulsive factors with which *Miranda* was concerned." *Id.* 421 F.2d at 223.

In the instant case Castellana was "deprived of his freedom of action" and therefore "in custody." It is true that the agents had not placed him under arrest and that they questioned him in his own store. But it is also true that the trial court found he was not free to leave; moreover, the presence of twenty armed agents completely undermines the Government's argument that Castellana was in "friendly surroundings" and therefore could not be in custody. We conclude that the agents created an atmosphere of compulsion and consequently a custodial setting for Castellana's interrogation.

But, the Government argues, Arwine's questions were not the sort of interrogation treated by *Miranda*; the *Miranda* doctrine applies to questions asked for evidentiary reasons, and Arwine's questions were posed solely for security purposes. This argument fails on two counts. First, the trial court found that there was no evidence that the agents had any reason to believe Castellana threatened their safety. The finding is not clearly erroneous; it is supported by the agents' failure to give the accused a patdown and by their placing the discovered guns on the desk in front of him. We conclude that Arwine's inquiries were not valid security questions.

Even if the questions had had a legitimate security purpose, we believe for several reasons that *Miranda* warnings should have preceded them. First, such questions can be of only limited security value. If a detainee is truly dangerous, it is unlikely that he will reveal the location of weapons essential to his own security. Second, it would be difficult to define what is a "security" or "safety" inquiry, as opposed to an "evidentiary" inquiry. If the response can be used in evidence against the detainee, then to some extent he is being asked to incriminate himself—precisely the danger *Miranda* seeks to avoid. Third, under existing authority the police may take direct action and search a suspicious, dangerous detainee. Terry v. Ohio, 1968, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. Such a search would seem to provide much better protection than mere questioning. In sum, we feel that a "security" exception to *Miranda* would erode that doctrine measurably without providing substantially greater protection for the police.

### III.

Having determined that Castellana's statements were illegally elicited, we now ask whether the guns should be excluded as derivatives of Castellana's unlawfully elicited responses.

The test to be applied is

. . . "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."

Wong Sun v. United States, 1963, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed. 2d 441.

The Supreme Court has recognized two ways in which evidence can be derived so that the primary taint is purged. First, the connection between the lawless conduct of the police and the discovery of the challenged evidence may "become so attenuated as to dissipate the taint." Nardone v. United States, 1934, 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307. *See* Williams v. United States, 5th Cir. 1967, 382 F.2d 48. Far from being attenuated, the connection in Castellana's case is strong and apparent. Immediately following his improper question Agent Arwine used the response to search for and discover four handguns.

The second means for "purging the taint" is discovering the same evidence from an "independent source." Silverthorne Lumber Co. v. United States, 1920, 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319. *See, e. g.,* Agius v. United States, 5th Cir. 1969, 413 F.2d 915. In this case one could argue that the search warrant was such an independent source. The warrant, however, was not utilized independently of Castellana's statements. Instead it was used in conjunction with them to produce the

four handguns. In *Wong Sun* terms, the guns were "come at by exploitation" of an illegality, improper interrogation.

 Notwithstanding the inapplicability of these two recognized exceptions to the exclusionary rule, the Government argues we should admit the guns because agents searching the market under the warrant would have found the guns eventually, even without Castellana's guidance. This argument is an application of the "inevitable discovery" limitation on the exclusionary rule. It is not widely adopted; it has not been adopted by the Supreme Court and it is not the rule in this Circuit. Annot., 43 A.L.R. 3rd 385 (1972). Furthermore, we reject the Government's invitation to embrace it now. To admit unlawfully obtained evidence on the strength of some judge's speculation that it would have been discovered legally anyway would be to cripple the exclusionary rule as a deterrent to improper police conduct. *See* Pitler, "The Fruit of the Poisonous Tree" Revisited and Shepardized, 56 Calif.L.Rev. 579 (1968). *Contra*, Maguire, How to Unpoison the Fruit—The Fourth Amendment and the Exclusionary Rule, 55 J. Crim.L.C. & P.S. 307.

Since we have found that Arwine's questions constituted unlawful custodial interrogation, and the handguns were the products of those questions, Castellana's statements and guns must be excluded from evidence.

Affirmed.

### ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

Before BROWN, Chief Judge, and WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, CLARK, RONEY and GEE, Circuit Judges.

BY THE COURT:

A member of the Court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc,

It is ordered that the cause shall be reheard by the Court en banc with oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of supplemental briefs.