**UNITED STATES of America**

v.

**Salvatore CASTELLANA, also known as Sam Castellana.**

**No. 72–327–Cr–T–H.**

United States District Court, M. D. Florida, Tampa Division.

June 29, 1977.

Eleanore J. Hill, Asst. U. S. Atty., Tampa, Fla., for plaintiff.

James R. Yon, Tampa, Fla., for defendant.

1. See note 3, infra.

2. 18 U.S.C., § 3731 provides:

*Appeal by United States*

"In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

"An appeal by the United States shall lie to a court of appeals from the decision or order of a district courts [sic] suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on

ORDER

CHARLES R. SCOTT, Senior District Judge.

This case is before the Court on a motion of defendant Salvatore Castellana to dismiss the present indictment. In 1959, 1960 and 1962 defendant had been convicted in the Hillsborough County Criminal Court for lottery law offenses. On September 11, 1968, defendant was granted a pardon for those offenses by the Florida Board of Pardons.

Defendant was indicted on November 28, 1972, for violating 18 U.S.C. App., § 1202(a)(1),[1] which forbids a previously convicted felon to receive or possess a firearm that has moved in interstate commerce. After an initial appearance on December 4, 1972, defendant pled not guilty at his arraignment on February 2, 1973. On February 27, 1973, trial was set to commence during the weeks of March 19 or 26, 1973.

At the pre-trial conference on March 9, 1973, trial was set for a day certain on March 26, 1973. Defendant's motion to suppress statements and real evidence, filed on February 22, 1973, was heard on March 26, 1973. The next day the Court orally granted the motion to suppress, entering a written opinion in support of the order on May 2, 1973, *United States v. Castellana*, 369 F.Supp. 376 (M.D.Fla.1973). Pursuant to 18 U.S.C. § 3731,[2] the government ap-

an indictment or information, if the United States Attorney certified to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.

"The appeal in all such cases shall be taken within thirty days after the decision, judgment, or order has been rendered and shall be diligently prosecuted.

"Pending the prosecution and determination of the appeal in the foregoing instances, the defendant shall be released in accordance with Chapter 207 of this title.

"The provisions of this section shall be liberally construed to effectuate its purposes."

pealed; and on January 17, 1974, the Court of Appeals affirmed this Court's order. *United States v. Castellana,* 488 F.2d 65 (5th Cir. 1974). However, a rehearing en banc was granted on March 1, and on September 6, 1974, the Fifth Circuit Court of Appeals en banc affirmed in part and reversed in part this Court's order. *United States v. Castellana,* 500 F.2d 325 (5th Cir. 1974), reh'g en banc 488 F.2d 65. The mandate from that decision was issued by the Court of Appeals on October 2, 1974.

This case, on May 28, 1975, was again set for trial to commence July 7, 1975. Because of a hung jury, a mistrial was declared on July 8, 1975. Finally, on March 5, 1976, defendant filed the present motion to dismiss. The Court held a hearing on that motion on April 22, 1976, and a further hearing on May 20, 1976. Since that time the motion to dismiss has been under advisement.

Defendant's motion presents the issue whether the pardon granted him on September 11, 1968, exempts him from operation of 18 U.S.C. App., § 1202(a)(1).

In 1968, as a major part of its effort to stem the rising tide of crime in the United States, Congress enacted the Omnibus Crime Control and Safe Streets Act. The Act sought to curb crime in a number of different ways, one of which was to ban possession of firearms by persons who were deemed unfit to carry them. That function was embodied in Title VII of the Act, comprising 18 U.S.C. App., §§ 1201–1203.[3]

Among those persons barred by Title VII from carrying firearms are felons, veterans who have received a dishonorable discharge, persons who have been adjudged mentally incompetent, former citizens who have renounced their citizenship, and aliens who are unlawfully in the United States. The penal provisions of the statute, which are contained in § 1202, impose a maximum possible punishment of a $10,000.00 fine and two years imprisonment.

But Title VII does not penalize all persons who seemingly come within its proscriptive terms. Section 1203 exempts two classes of persons from operation of the statute: (1) prisoners who have expressly been entrusted with a firearm by a compe-

---

**3.** Those portions of Title VII which are relevant to the present case provide as follows:

§ 1201. *Congressional Findings and Declaration*

"The Congress hereby finds and declares that the receipt, possession, or transportation of a firearm by felons, veterans who are discharged under dishonorable conditions, mental incompetents, aliens who are illegally in the country, and former citizens who have renounced their citizenship, constitutes—

(1) a burden on commerce or threat affecting the free flow of commerce,

(2) a threat to the safety of the President of the United States and Vice President of the United States,

(3) an impediment or a threat to the exercise of free speech and the free exercise of a religion guaranteed by the first amendment to the Constitution of the United States, and

(4) a threat to the continued and effective operation of the Government of the United States and of the government of each State guaranteed by article IV of the Constitution."

§ 1202. *Receipt, possession, or transportation of firearms—Persons liable; penalties for violations*

(a) Any person who—

(1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony, . . . and

who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

(c) As used in this title—

(2) 'felony' means any offense punishable by imprisonment for a term exceeding one year, but does not include any offense (other than one involving a firearm or explosive) classified as a misdemeanor under the laws of a State and punishable by a term of imprisonment of two years or less; . . . "

"§ 1203. *Exemptions*

This title shall not apply to—

(1) any prisoner who by reason of duties connected with law enforcement has expressly been entrusted with a firearm by competent authority of the prison; and

(2) any person who has been pardoned by the President of the United States or the chief executive of a State *and has expressly been authorized by the President or such chief executive, as the case may be, to receive, possess, or transport in commerce a firearm.*" (Emphasis Added.)

tent prison official; (2) persons who have been pardoned by the President of the United States or the chief executive of a state and have been expressly authorized by the President or such chief executive to carry a firearm. Section 1203(1) is plainly inapplicable to defendant Castellana because it refers to prisoners. Section 1203(2) refers to persons who have received pardons for their past offenses.

Defendant's September 11, 1968, pardon provides (after describing defendant's three convictions):

" . . . Therefore, be it known that the said Sam Castellana, be, and he is hereby granted a full and complete pardon of the above offenses, thereby restoring to him full and complete civil rights."

Does defendant Castellana, by virtue of his pardon, come within the terms of the § 1203(2) exemption. In order to resolve this issue, the Court must first determine the meaning of § 1203(2).

## I.

■ A court's objective in construing a federal statute is "to ascertain the congressional intent and give effect to the legislative will." *Philbrook v. Glodgett*, 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525, 533 (1975); *Craig v. Finch*, 425 F.2d 1005, 1008 (5th Cir. 1970). Legislative intent is the lode star of statutory construction. *Louisiana Power & Light Company v. United Gas Pipe Line Company*, 456 F.2d 326, 333 (5th Cir.), *reversed on other grounds, Federal Power Commission v. Louisiana Power & Light Company*, 406 U.S. 621, 92 S.Ct. 1827, 32 L.Ed.2d 369 (1972). The most important indicium of legislative intent is the statute's plain language. *United States v. Second National Bank of North Miami*, 502 F.2d 535, 540 (5th Cir. 1974), *cert. denied*, 421 U.S. 912, 95 S.Ct. 1567, 43 L.Ed.2d 777 (1975); *Ray Baillie Trash Hauling, Inc. v. Kleppe*, 477 F.2d 696, 707 (5th Cir. 1973), *reh'g. denied*, 478 F.2d 1403, *cert. denied*, 415 U.S. 914, 94 S.Ct. 1410, 39 L.Ed.2d 468 (1974); *District of Columbia National Bank v. District of Columbia*, 121 U.S.App.D.C. 196, 348 F.2d 808, 810 (1965). The plain language of § 1203(2) indicates that a pardon exempts a convicted felon from the penal provisions of § 1202 only if he is expressly authorized by the pardoning executive to receive, possess or transport in commerce a firearm. The conjunction "and" links the two prongs of § 1203(2), making each of them an essential element of the exemption.

■ Where statutory language is clear and unequivocal, it is not necessary to resort to interpretative devices. *March v. United States*, 165 U.S.App.D.C. 267, 506 F.2d 1306, 1313 (1974); *Arkansas Valley Industries, Inc. v. Freeman*, 415 F.2d 713, 717 (8th Cir. 1969); *General Electric v. Southern Construction Co.*, 383 F.2d 135, 138 (5th Cir. 1967), *cert. denied*, 390 U.S. 955, 88 S.Ct. 1049, 19 L.Ed.2d 1148 (1968). Nevertheless, the rules of statutory construction fully support the plain meaning of § 1203(2).

■ The principle of *expressio unius est exclusio alterius* requires that § 1203 be strictly construed: by not expressing possible exemptions in § 1203 Congress impliedly excluded them from consideration. *Hawkeye Chemical Co. v. St. Paul Fire & Marine Ins. Co.*, 510 F.2d 322, 326 (7th Cir. 1975), *cert. denied*, 421 U.S. 965, 95 S.Ct. 1955, 44 L.Ed.2d 452 (1975). Several courts have given § 1203 such a construction. For example, in *United States v. Liles*, 432 F.2d 18 (9th Cir. 1970), the court held that since Congress did not expressly exempt from § 1202(a)(1) felons whose convictions were later reversed, such persons were subject to the statute's proscriptions. In *United States v. Tobin*, 408 F.Supp. 760 (W.D.Pa. 1976), the court held that a change in the state drug laws, reducing the crime of marijuana possession from a felony to a misdemeanor, was not a stated exception to § 1202(a)(1) and therefore the defendant, a convicted felon under the former state statute, remained liable. Since § 1203 explicitly exempts only prisoners who have been entrusted with a firearm, and pardoned felons who have been expressly authorized to carry a firearm, it implicitly excludes other persons from exempt status.

Second, the plain meaning of § 1203(2) is supported by the legislative history of Title VII. The title's sponsor, Senator Russell Long, made the following comments on the Senate floor:

"[Senator Long of Louisiana]: I have prepared an amendment which I will offer at an appropriate time, simply setting forth the fact that anybody who has been convicted of a felony . . . is not permitted to possess a firearm, and he would be punished by a sentence not to exceed two years in the penitentiary or a $10,000 fine, or both.

"It might be well to analyze, for a moment, the logic involved. When a man has been convicted of a felony, unless—as this bill sets forth—he has been expressly pardoned by the President and the pardon states that the person is to be permitted to possess firearms in the future, that man would have no right to possess firearms. He would be punished criminally if he is found in possession of them." 114 Cong.Rec. 13,868 (1968).

"What the amendment seeks to do is make it unlawful for a firearm—be it a handgun, a machine gun, a long-range rifle or any kind of firearm—to be in the possession of a convicted felon who has not been pardoned and has therefore lost his right to possess firearms. It would not apply to a person pardoned by a Governor or a President if the pardon specifically provides that he will have the right to carry firearms. He would then have that right. Otherwise, he would not have it." 114 Cong.Rec. 14,773 (1968).

■ The explanations of sponsoring legislators deserve great respect in ascertaining the meaning of statutes. *National Woodwork Manufacturers Ass'n v. N.L.R.B.*, 386 U.S. 612, 640, 87 S.Ct. 1250, 1265–66, 18 L.Ed.2d 357, 375 (1967); *City of*

*New York v. Train*, 161 U.S.App.D.C. 114, 494 F.2d 1033 (1974), *aff'd*, 420 U.S. 35, 95 S.Ct. 839, 43 L.Ed.2d 1 (1975). In a recent case involving the "in commerce or affecting commerce" language of 18 U.S.C. App., § 1202(a)(1), the Supreme Court relied heavily upon the remarks of Senator Long in construing the subsection. *See Scarborough v. United States*, —— U.S. ——, —— ——, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977).

■ A third rule of construction which supports the plain meaning of § 1203(2) is the principle that statutes should be construed so as to effectuate their underlying policies. *Philbrook v. Glodgett, supra*, 421 U.S. at 713, 95 S.Ct. at 1898, 44 L.Ed.2d at 532–33; *Argosy Limited v. Hennigan*, 404 F.2d 14, 20 (5th Cir. 1968). If a state pardon without more could exempt an individual from § 1202(a)(1), the policies underlying Title VII could well be thwarted. The legislative history of Title VII and the language of § 1201[4] show that the statute's policies were the prevention of crime and menaces to society which are caused by crime. Congress intended that these policies be considered before previously convicted felons are allowed to possess firearms. A state governor or board of pardons might fail to consider, for example, the threat to commerce[5] or the threat to the exercise of free speech[6] posed by convicted felons in possession of handguns. Congress reasonably concluded that the way to assure that state pardoning authorities considered federal policies was to require express authorization to carry a firearm.

The Court concludes that the plain language, statutory construction, the legislative history, and the underlying policies of § 1203(1) unmistakably require that a pardoned felon be expressly authorized to carry a firearm. Defendant was not ex-

4. See note 3, supra.

5. "You cannot do business in an area, and you certainly cannot do as much of it and do it as well as you would like, if in order to do business you have to go through a street where there are burglars . . . armed to the teeth against innocent citizens." Remarks of Senator Long, 114 Cong.Rec. 13,869 (1968).

6. "[§ 1201(3)], of course, could clearly pertain to this Government's right to protect citizens, such as Martin Luther King, who are expressing either religious or political views and whose life might be endangered because someone did not agree with what they were saying. But they have a right to say it." *Id.*

pressly authorized either in the language of his pardon or in a collateral instrument to receive or possess a firearm. Therefore, he fails to come within the terms of the § 1203(2) exemption.

## II.

Defendant argues, however, that his pardon should exempt him from § 1202(a)(1) on equitable grounds, because the pardon did not mention the federal disabilities concerning possession of firearms, and because he detrimentally relied on that pardon to erase his offenses for all purposes. That argument implicitly challenges the authority of Congress to give a state pardon an effect different from that which the State would give it. For three reasons, that challenge must fail.

First, Congress has not infringed, in § 1203(2), the proper scope of a pardon. In *Ex parte Garland*, 71 U.S. (4 Wall.) 333, 18 L.Ed. 366 (1867), the Supreme Court described the effect of a pardon in extremely broad language:

"A pardon reaches both the punishment prescribed for the offense and the guilt of the offender; and when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offense." *Id.* at 380, 18 L.Ed. at 380.

Though older cases often employed this language, e. g., *Edwards v. Commonwealth*, 78 Va. 39, 43 (1883); *Wood v. Fitzgerald*, 3 Or. 568, 577 (1870), more recent authorities have questioned the breadth of the *Garland* description. *See, e. g., Richards v. United States*, 89 U.S.App.D.C. 354, 192 F.2d 602, 605–608 (1951), *cert. denied*, 342 U.S. 946, 72 S.Ct. 560, 96 L.Ed. 703 (1952), *reh'g denied*, 348 U.S. 921, 72 S.Ct. 676, 96 L.Ed. 1334; *United States v. Swift*, 186 F. 1002, 1016–18 (N.D.Ill.1911); *Thrall v. Wolfe*, 503 F.2d 313, 315 (7th Cir. 1974), *cert. denied*, 420 U.S. 972, 95 S.Ct. 1392, 43 L.Ed.2d 652 (1975). *See* "Does A Pardon Blot Out Guilt?" 28 Harv.L.Rev. 647 (1915). Modern cases support the proposition that "[a] pardon . . . remits punishment and re-

moves some disabilities but does not erase the legal event determinative of the offender's status *qua* offender, i. e., the conviction itself." A. Gough, "Expungement of Adjudication Records of Juvenile and Adult Offenders: A Problem of Status," 1966 Wash. U.L.Q. 147, 150 (1966).

In *Carlesi v. New York*, 233 U.S. 51, 34 S.Ct. 576, 58 L.Ed. 843 (1914), a case factually analogous to the present case, the Supreme Court itself limited the efficacy of a pardon. In *Carlesi*, the defendant was indicted for forgery under New York's "second offender" statute, calling for heavier penalties for individuals with prior convictions. The defendant moved to strike all references to the prior conviction from the indictment on the ground that he had been granted a presidential pardon. Upholding the lower court's denial of the motion to strike, the Supreme Court reasoned that, as long as the state's consideration of a federal conviction which had been pardoned was not a punishment for the previous offense, but rather an exercise by the state of local legislative power—"power within its exclusive cognizance," there was no unconstitutional limitation on the effect of the federal pardon. *Id.* at 57, 34 S.Ct. at 578, 58 L.Ed. at 849.

18 U.S.C., §§ 1201–1203 are analogous to the second offender statute with which the Court was confronted in *Carlesi*. Title VII is distinguishable from second offender statutes only insofar as it deals with conviction because of a previous offense rather than increased penalties because of a previous offense. Neither a second offender statute nor Title VII punishes the first offense. Title VII is an exercise by Congress of power within its exclusive cognizance, namely, the determination of what acts shall constitute a federal crime. The converse of the Court's holding in *Carlesi* is that "Congress has the power to accord a state pardon differing effects in differing contexts, depending on its objective in creating the disqualification. . . [and] there is nothing inherent in a state pardon which compels the federal government to disregard the pardoned offense." *Thrall v.*

*Wolfe, supra,* 503 F.2d at 315, 316. Indeed, if the Court in *Carlesi* did not endorse the converse of its holding, it suggested that, given a proper case, it would do so:

"Determining as we do only the case before us, that is, whether the granting of a pardon by the President for a crime committed against the United States operates to restrict and limit the power of the state of New York to punish crimes thereafter committed against its authority, and in so doing to prescribe such penalties as may be deemed appropriate in view of the nature of the offense and the character of the offender, taking in view his past conduct, we must not be understood as in the slightest degree intimating that a pardon would operate to limit the power of the United States in punishing crimes against its authority to provide for taking into consideration past offenses committed by the accused as a circumstance of aggravation, even although for such past offenses there had been a pardon granted.

"Indeed, we must not be understood as intimating that it would be beyond the legislative competency to provide that the fact of the commission of an offense after a pardon of a prior offense should be considered as adding an increased element of aggravation to that which would otherwise result alone from the commission of the prior offense." *Carlesi v. New York, supra,* 233 U.S. at 59, 34 S.Ct. at 578, 58 L.Ed. at 849.

■■■■ Second, there is a more fundamental reason why Congress can vary the effect of a state pardon. Congress is under no obligation to consider a state's laws when enacting federal legislation. Federal laws are the supreme law of the land, and to the extent that state law or policies are in conflict with them, the federal laws control. U.S.Const. art. VI, cl. 2. *Ex parte Bransford,* 310 U.S. 354, 359, 60 S.Ct. 947, 950, 84 L.Ed. 1249, 1252 (1940); *McCulloch v. Maryland,* 4 Wheat. 316 *passim,* 4 L.Ed. 579 (1819). Even if Congress did consider state pardoning laws when it enacted Title VII, its intention to override the effect of those laws is apparent.

"At times it has been inferred from the nature of the problem with which Congress was dealing that the application of a federal statute should be dependent upon state law . . . But we must generally assume, in the absence of a plain indication to the contrary, that Congress when it enacts a statute is not making the application of the federal act dependent upon state law." *Jerome v. United States,* 318 U.S. 101, 104, 63 S.Ct. 483, 485, 486, 87 L.Ed. 640, 643 (1943).

There is no indication in Title VII that Congress intended state pardons per se to remove convicted felons from the reach of § 1202(a)(1): indeed, as noted, the presence of the express authorization requirement implies the opposite. The Court is convinced that the subject matter of Title VII is an area in which Congress intended to do its own defining rather than leave the matter to variable state law. *Arrellano-Flores v. Hoy,* 262 F.2d 667, 668 (9th Cir. 1958).

■■■■ Finally, defendant's equitable-exemption argument is ill-founded for still another reason. He asserts, in effect, that he did not know that his lottery offenses would still be considered for purposes of § 1202(a)(1), regardless of his pardon. Knowledge that one is a felon, however, is not an element of a § 1202 offense: a defendant need only have knowingly possessed the firearm. *United States v. Sutton,* 521 F.2d 1385, 1391 (7th Cir. 1975); *United States v. Snell,* 353 F.Supp. 280, 284 (D.Md.1973). *See United States v. Powell,* 513 F.2d 1249, 1251 (8th Cir. 1975); *United States v. Horton,* 503 F.2d 810, 813 (7th Cir. 1974); *United States v. Wiley,* 478 F.2d 415, 417–18 (8th Cir. 1973), *cert. denied,* 419 U.S. 879, 95 S.Ct. 143, 42 L.Ed.2d 119 (1974); *United States v. Crow,* 439 F.2d 1193, 1195 (9th Cir. 1971), *vacated on other grounds,* 404 U.S. 1009, 92 S.Ct. 687, 30 L.Ed.2d 657 (1972). If, in order to be indicted under § 1202, defendant need not have known he was a felon, then certainly he need not have known he was not exempted from the terms of the statute.

The Court holds that defendant's pardon does not exempt him from operation of 18 U.S.C. App., § 1202(a)(1) since the pardon does not expressly authorize him to receive, possess, or transport in commerce a firearm. *United States v. Hayes*, 535 F.2d 479 (8th Cir. 1976); *United States v. Sutton, supra; United States v. Kelly*, 519 F.2d 794 (8th Cir. 1975), *cert. denied*, 423 U.S. 926, 96 S.Ct. 272, 46 L.Ed.2d 254 (1975); *United States v. Mostad*, 485 F.2d 199 (8th Cir. 1973), *cert. denied*, 415 U.S. 947, 94 S.Ct. 1468, 39 L.Ed.2d 563 (1974). *See Thrall v. Wolfe, supra.* Consequently, the Court will deny defendant's motion to dismiss the indictment.