**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Carlos Richard ROMERO,
Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Joseph Anthony SENA,
Defendant-Appellant.**

**Nos. 80–2181, 80–2198.**

United States Court of Appeals,
Tenth Circuit.

Nov. 4, 1982.

Charles R. Finley of Warner & Finley, Albuquerque, N.M., for defendant-appellant Carlos Richard Romero.

R. Raymond Twohig, Jr., Asst. Federal Public Defender, Albuquerque, N.M., for defendant-appellant Joseph Anthony Sena.

Wayne G. Chew, Asst. U.S. Atty., Albuquerque, N.M. (R.E. Thompson, U.S. Atty., and James F. Blackmer, Asst. U.S. Atty., Albuquerque, N.M., with him on the brief), for plaintiff-appellee.

Before BARRETT, DOYLE and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

Carlos Richard Romero and Joseph Anthony Sena appeal their convictions for possession of marijuana with the intent to distribute it, a violation of 21 U.S.C. § 841(a)(1). On appeal the issues are whether the trial court committed reversible error when it (1) refused to suppress marijuana seized from Sena's home on the ground that the affidavit supporting the search warrant contained false statements; (2) refused to suppress marijuana obtained from Romero's pants pocket and van on the ground that the police officers' seizure was illegal; (3) allowed the government to introduce into evidence two revolvers seized from Romero's van; (4) refused to admit a co-indictee's written statement absolving Romero of involvement in the crime; and (5) refused to admonish the jury to disregard an officer's testimony concerning admissions by Romero because the officer had not advised Romero of his *Miranda* rights before interrogation.

Viewing the evidence in the light most favorable to the government, as we must when reviewing criminal convictions on appeal, the relevant facts are as follows. Drug Enforcement Administration (DEA) Agent Lester Toole received an anonymous tip that between forty and sixty pounds of sinsemilla, a high-grade marijuana, and some cocaine and heroin were located at the home of Billy Sena, a suspected drug dealer. Toole informed the Albuquerque police department of the tip, and the department dispatched Officers Erekson, Espinosa, and Ortiz to conduct surveillance at Sena's home. As the officers drove by the home, they observed appellant Romero, whom the officers suspected of being a drug dealer, and Joe Adelaido Ortega carrying five grocery sacks to a van. Romero and Ortega entered the van and drove away. After Romero and Ortega had driven about a mile, the officers had a second police car stop the van. Drawing their weapons, the officers ordered Romero and Ortega out of the vehicle. While the officers were questioning the men, Officer Erekson patted down Ortega for weapons and Officer Espinosa patted down Romero. Meanwhile, Officer Ortiz peered through the windows of the van. When he opened the door on the driver's side to inspect the front seat area for weapons he smelled a strong odor of marijuana. Then while walking around the van to check the passenger side for weapons, Ortiz told the other officers, "It smells like a ton of dope in there."

About the same time, Officer Espinosa was completing his pat-down of Romero. Espinosa felt a stiff bulge in Romero's left front pants pocket; he reached in and pulled out a packet of cigarette rolling papers and a plastic bag containing three hundredths of an ounce of marijuana. Shortly thereafter the officers arrested both Romero and Ortega.

The officers next obtained warrants to search Romero's van and Billy Sena's home. In the van they found two revolvers and, in three of the five grocery sacks, about seven pounds of marijuana. At Sena's house they found several pounds of marijuana and weighing scales. There they arrested appellant Joseph Anthony Sena, Billy Sena's son.

Sometime before trial Ortega disappeared. Romero's and Sena's trials were consolidated, and a jury found them guilty of possession of marijuana with intent to distribute.

## I

Sena contends that because the affidavit supporting the warrant to search his home contained false statements, the trial court should have suppressed all evidence seized from his home. The affidavit stated:

"[T]he marijuana [seized from Romero's van] was seedless ('sin semilla' marijuana—very expensive, high-grade marijuana)—further corroborating the apparently eyesight observations of Agent Tuell's source. The Source advised Agent Tuell that there 'IS' marijuana and cocaine and heroin in above-said premises with Billy Sena, and this Source said there were '40 to 60 pounds' of 'Sin Semilla' marijuana in above premises—now corroborated by above seizure of marijuana as said above."

R. I, 29. As it turned out, the marijuana seized from Romero's van and Sena's house was not sinsemilla, but marijuana of a lower grade.

■ Upon a defendant's request, the trial court must conduct a pretrial hearing if "the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676–77, 57 L.Ed.2d 667 (1978). If the defendant establishes by a preponderance of the evidence the allegations of perjury or reckless disregard of the truth, and if the affidavit's remaining content is insufficient to establish probable cause, evidence obtained by means of the search warrant must be suppressed. *Id.* at 156, 98 S.Ct. at 2676.

■ At the pretrial hearing Sena introduced no evidence showing that the officers made the false statements knowingly or with reckless disregard for the truth. The

trial court, therefore, was correct in not suppressing evidence seized from Sena's home.

## II

Romero's principal contention is that the Albuquerque police violated his Fourth Amendment rights by stopping his van, by searching the driver and passenger areas of his van for weapons, and by seizing the packet of marijuana from his pants pocket.

*The Stop*

■ In *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court recognized that in appropriate circumstances a police officer may stop a person for questioning even though he does not have probable cause to arrest. The police officer must reasonably suspect the person is engaged in or about to engage in unlawful activity, and his suspicion must be based on "specific and articulable facts [and] rational inferences from those facts." *Id.* at 21, 88 S.Ct. at 1879. The Court has applied *Terry* to car stops. *Delaware v. Prouse,* 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660 (1979).

■ Romero argues that the Albuquerque police officers did not possess the "specific and articulable facts" necessary to justify stopping his van. We disagree. The police officers had received an anonymous tip that there were large quantities of marijuana at the home of Billy Sena, a suspected drug dealer, and had thereafter personally observed Ortega and Romero, another suspected drug dealer, leave Sena's house with five grocery sacks and drive away in a van. Although this information did not give the officers probable cause to arrest Romero and Ortega, we believe the police officers could reasonably suspect Ortega and Romero were engaged in unlawful activity and could stop their vehicle to question them. In these circumstances, a police officer is not required "to simply shrug his shoulders and allow a crime to occur or a criminal to escape." *Adams v. Williams,* 407 U.S. 143, 145, 92 S.Ct. 1921, 1922, 32 L.Ed.2d 612 (1972).

## The Search of the Van

After the police ordered Romero and Ortega to step out of the van and as the police were searching the men for weapons, Officer Ortiz opened the driver's side of the van and peered in. He then walked to the passenger side of the van, opened the door, and looked in. Romero objects to Officer Ortiz' conduct on two grounds. First, contrary to the officer's testimony, Romero claims that Ortiz did not simply search the van for weapons, but also for criminal evidence. Second, Romero argues that even if Officer Ortiz was searching only for weapons, the search was unjustified because the officers had ordered Romero and Ortega to step out of the van, and the two men could not possibly have reached into the van for weapons.

■ Viewing the evidence in the light most favorable to the government, *see United States v. Rios,* 611 F.2d 1335, 1344 (10th Cir. 1979), we conclude that Officer Ortiz was searching only for weapons. At the suppression hearing, Ortiz stated that he had searched the van only for weapons, not for criminal evidence. Nothing in the record contradicts his testimony.

■ We also reject Romero's second contention. Just as officers may search a car for weapons incident to a lawful arrest, *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), officers who lawfully have stopped a suspect and reasonably fear he may be armed and dangerous may search for weapons on the suspect's person, *Terry,* 392 U.S. at 24, 27, 88 S.Ct. at 1881, 1883, and may conduct a limited search for weapons in the suspect's car, *United States v. Rainone,* 586 F.2d 1132 (7th Cir. 1978), *cert. denied,* 440 U.S. 980, 99 S.Ct. 1787, 60 L.Ed.2d 239 (1979); *United States v. Green,* 465 F.2d 620, 624–25 (D.C. Cir.1972); *cf. United States v. Johnson,* 637 F.2d 532 (8th Cir. 1980) (officers may search suspect's duffel bag). The suspect may have hidden a weapon in a part of the car readily accessible to him. He may break away from the police and grab the weapon or, if allowed to return to the car, he may shoot or harm an officer. The officers reasonably could suspect that Ortega or Romero were armed, since in other investigations of Romero, Officers Erekson and Espinosa had discovered that Romero was armed.

## The Seizure of Marijuana from Romero's Pocket

Officer Espinosa's seizure of the bag of marijuana from Romero's pants pocket is a more difficult issue, primarily because the testimony of government witnesses is conflicting. Espinosa testified that as he was patting down Romero he heard Officer Ortiz exclaim that "it smelled like a ton of dope" in the van. Immediately thereafter, Espinosa felt a stiff object in Romero's pants pocket, and although he did not suspect it was a weapon, he nevertheless reached in and pulled out the cigarette papers and the small bag of marijuana. However, Officers Ortiz and Erekson both testified that Espinosa reached into Romero's pocket and found the bag of marijuana before Ortiz made his statement about the strong odor of marijuana in the van.

■ We agree with Romero that Officer Espinosa's seizure of the marijuana transgressed the permissible limits of a *Terry* pat-down search for weapons. Espinosa testified that he knew the stiff object in Romero's pants pocket was not a weapon, but seized it anyway. *See Sibron v. New York,* 392 U.S. 40, 65–66, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917 (1968).

■ The timing of Ortiz' announcement about the smell in the van is important in determining whether Officer Espinosa's action might be justifiable as a search incident to a lawful arrest. *See id.* at 67, 88 S.Ct. at 1904. Officer Ortiz was an experienced policeman familiar with the odor of marijuana. This odor, combined with the tip and the observations that justified the stop, gave the officers probable cause to arrest both men. *Cf. United States v. Bowman,* 487 F.2d 1229 (10th Cir. 1973) (probable cause to arrest exists when officer familiar with its odor smells marijuana in car). Therefore, if Officer Espinosa heard Ortiz' announcement before he searched

Romero's pocket, he had probable cause to arrest Romero and hence lawfully could perform the search. That the search occurred before the arrest did not invalidate it; the arrest "followed quickly on the heels of the challenged search." *Rawlings v. Kentucky,* 448 U.S. 98, 111, 100 S.Ct. 2556, 2564, 65 L.Ed.2d 633 (1980). Unfortunately, no finding of fact was made as to whether Espinosa heard Ortiz' announcement before or after the search. The court simply stated, "After reviewing counsels' briefs and hearing the testimony of the witnesses and being otherwise fully advised, I find that the motions [to suppress] are not well taken."

We need not remand this case to the district court to determine whether Officer Espinosa performed the search after hearing Ortiz' announcement. Even if we assume that the seizure of the bag of marijuana occurred before Espinosa had probable cause to arrest, the bag and its contents were admissible under an exception to the exclusionary rule. The Supreme Court has adopted two exceptions to the rule that unlawfully seized evidence must be suppressed. First, the connection between the lawless conduct of the police and the discovery of the challenged evidence may "become so attenuated as to dissipate the taint." *Nardone v. United States,* 308 U.S. 338, 341, 60 S.Ct. 266, 267, 84 L.Ed. 307 (1939). Second, illegally seized evidence may be admitted if the same evidence was lawfully discovered through an "independent source." *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319 (1920). A third exception, which the Supreme Court has never formally adopted but has recognized, is the inevitable discovery doctrine. *See Brewer v. Williams,* 430 U.S. 387, 406 n. 12, 97 S.Ct. 1232, 1243 n. 12, 51 L.Ed.2d 424 (1977). Most circuits have adopted this doctrine. *See United States v. Bienvenue,* 632 F.2d 910, 913–14 (1st Cir. 1980); *United States v. Brookins,* 614 F.2d 1037, 1044–48 (5th Cir. 1980); *United States v. Schmidt,* 573 F.2d 1057, 1065 n. 9 (9th Cir.), *cert. denied,* 439 U.S. 881, 99 S.Ct. 221, 58 L.Ed.2d 194 (1978); *Owens v. Twomey,* 508 F.2d 858,

865–66 (7th Cir. 1974); *Virgin Islands v. Gereau,* 502 F.2d 914, 927–28 (3d Cir. 1974), *cert. denied,* 420 U.S. 909, 95 S.Ct. 829, 42 L.Ed.2d 839 (1975); *United States v. Falley,* 489 F.2d 33, 40–41 (2d Cir. 1973); *United States v. Seohnlein,* 423 F.2d 1051, 1053 (4th Cir.), *cert. denied,* 399 U.S. 913, 90 S.Ct. 2215, 26 L.Ed.2d 570 (1970); *Wayne v. United States,* 318 F.2d 205, 209 (D.C.Cir.), *cert. denied,* 375 U.S. 860 (1963).

■ Under the inevitable discovery exception, unlawfully seized evidence is admissible if there is no doubt that the police would have lawfully discovered the evidence later. We recognize the danger of admitting unlawfully obtained evidence "on the strength of some judge's speculation that it would have been discovered legally anyway," *United States v. Castellana,* 488 F.2d 65, 68 (5th Cir. 1974), *rev'd on other grounds,* 500 F.2d 325 (5th Cir. 1974) (en banc), but that danger is diminished when, as here, the evidence clearly would have been discovered within a short time through a lawful investigation already underway. The circumstances of the instant case are appropriate for applying this exception. The record shows that Officer Ortiz' search of the van for weapons was underway when Officer Espinosa began his pat-down search of Romero, and that Ortiz' statement occurred no more than a few seconds after Espinosa reached into Romero's pocket. The discovery of the marijuana in the van provided probable cause to arrest Romero and Ortega, and upon arrest the officers unquestionably would have searched Romero and discovered the marijuana in his pocket.

We conclude, therefore, that the district court did not err in admitting the marijuana seized from Romero's pocket.

### III

Romero contends the trial court should not have allowed the government to introduce into evidence two revolvers seized from Romero's van. He argues that the firearms were not relevant evidence, and that even if they were relevant, their pro-

bative value was substantially outweighed by their prejudicial effect on the jury.

Determination of both these issues is within the district court's discretion, and on appeal we will not disturb that determination absent a clear showing of abuse of discretion. *Texas Eastern Transmission Corp. v. Marine Office-Appleton & Cox Corp.,* 579 F.2d 561, 566–67 (10th Cir. 1978). We hold that the court did not abuse its discretion in allowing the government to introduce the firearms as exhibits. The firearms may have been part of the circumstantial evidence of an intent to distribute the marijuana. *See United States v. Picklesimer,* 585 F.2d 1199, 1204 (3d Cir. 1978); *United States v. Cannon,* 472 F.2d 144, 145 (9th Cir. 1972). Further, any prejudice in allowing the government to introduce the firearms as exhibits was insubstantial. Before the weapons were admitted the government witnesses had discussed the weapons in testimony several times without defense objection. When cross-examining one of the police officers, Romero's counsel had referred to the firearms prior to their introduction as exhibits.

## IV

Romero alleges that the trial court should have allowed the introduction into evidence of the signed and notarized statement by Ortega—who had been arrested and who disappeared before trial—asserting that Romero did not know Ortega had marijuana in the grocery bags. The trial court allowed Romero's counsel to read the statement to the jury, but Romero contends that was not enough. He argues that jurors invariably have difficulty remembering the words of a statement, and that reading a statement to them at trial is not as effective as allowing them to read it in the jury room. This too is a matter within the discretion of the trial court, and there was no abuse of that discretion. The trial court's decision to permit Romero's counsel to read Ortega's statement adequately insured that the jury would consider it along with the other evidence.

## V

Finally, Romero contends that the trial court should have instructed the jury to disregard an officer's recounting of admissions Romero made when questioned by the officer, because the officer had not first advised Romero of his *Miranda* rights. Taking the stand on his own behalf, Romero testified on direct examination that he had not known the grocery sacks contained marijuana and that he had never admitted to police officers any involvement with the marijuana. The government then called for rebuttal DEA Agent Elias Chavez, who testified that Romero told Chavez he "had gone halfers with Mr. Ortega on it." Chavez admitted that he had not read Romero his *Miranda* rights before questioning him.

The Supreme Court has held that the government may use statements obtained in violation of the defendant's *Miranda* rights for the limited purpose of impeaching the testimony of a defendant who has voluntarily taken the stand, "provided of course that the trustworthiness of the evidence satisfies legal standards." *Harris v. New York,* 401 U.S. 222, 224, 91 S.Ct. 643, 645, 28 L.Ed.2d 1 (1971). Romero argues that Agent Chavez's testimony is untrustworthy because Chavez never mentioned Romero's admission in any written report, because Officer Espinosa—who was present at the time—also never reported Romero's statement, and because Chavez did not advise the prosecution of the conversation until six or seven months after it occurred.

Romero, however, confuses legal trustworthiness—that "the statements made to the police were [not] coerced or involuntary," *id.* at 224, 225 n. 2, 91 S.Ct. at 645, 646 n. 2—with credibility. Romero's argument goes only to the credibility of Chavez' testimony, which is a matter for the jury to consider in weighing the testimony. In cross-examination, Romero's counsel raised questions of Chavez' credibility. The judge allowed the jury to decide what weight to give the testimony; he did not err in refusing to tell the jury to disregard Agent Chavez' testimony.

AFFIRMED.