**Wallace F. THRALL, Plaintiff-Appellee,**

**v.**

**Cecil M. WOLFE, Regional Commissioner, Internal Revenue Service, et al., Defendants-Appellants.**

No. 73–1539.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 26, 1974.

Decided Aug. 23, 1974.

**314**

———◆———

David J. Cannon, U. S. Atty., Milwaukee, Wis., Irving Jaffe, Acting Asst. Atty. Gen., and Michael Kimmel, Atty., Dept. of Justice, Washington, D. C., for defendants-appellants.

Charles C. Victor, Marinette, Wis., for plaintiff-appellee.

Before FAIRCHILD and CUMMINGS, Circuit Judges, and JAMESON,* Senior District Judge.

FAIRCHILD, Circuit Judge.

Plaintiff Thrall brought this action for review of a decision by the Internal Revenue Service denying his application for a license as a dealer and manufacturer of firearms. Defendants are the IRS Regional Commissioner and the Secretary of the Treasury. The district court denied defendants' motion for summary judgment. Thrall v. Wolfe, 352 F.Supp. 1074 (E.D.Wis., 1972). Subsequently, the court granted plaintiff's cross motion, and ordered the Secretary to reconsider the license application without regard to plaintiff's prior felony conviction. We reverse.

Plaintiff constructs replica antique guns and repairs modern hunting weapons. Incidentally to that business, he applied under 18 U.S.C. § 923[1] for a license as a dealer and manufacturer of firearms. Plaintiff, however, had been convicted in 1942 by a Montana state court of assault in the first degree (a felony) and sentenced to 5 years in prison. This offense involved the use of a loaded pistol. Section 922(g) prohibits any person convicted of a crime punishable by more than one year's imprisonment from shipping or transporting any firearm or ammunition in interstate commerce. Section 922(h) prohibits such person from receiving any firearm or ammunition which has been so transported. Section 923(d)(1)(B), in turn, bars issuance of a firearms dealer license to one so prohibited under § 922(g) and (h). On this basis the I.R.S. denied plaintiff's application.

█ Plaintiff then obtained a pardon for his 1942 offense from the governor of Montana. The pardon provided: "I do hereby grant Wallace M. Thrall Full Pardon and Restoration of all Civil Rights lost by reason of the above conviction, and the right to receive, possess, or transport in commerce a firearm."[2] Accordingly, plaintiff renewed his license application, and a hearing was held. The hearing examiner concluded that a state governor's pardon did not remove the disabilities which § 922 imposes. The Assistant Regional Director of the Internal Revenue Service agreed, and again refused to issue the license. Plaintiff then sought judicial review in the district court under 18 U.S.C. § 923(f)(3).

**I.**

Plaintiff asserts that a federal agency may not premise denial of a license on a

---

* Senior District Judge William J. Jameson of the District of Montana is sitting by designation.

[1]. 18 U.S.C. §§ 921–928 were created as chapter 44 of Title 18 by Title IV, "State Firearms Control Assistance," of the Omnibus Crime Control and Safe Streets Act of 1968, Public Law 90–351, 82 Stat. 197, 225, and amended by Public Law 90–618, 82 Stat. 1214.

[2]. Under 18 U.S.C. App. § 1203(2), part of Title VII, "Unlawful possession or receipt of firearms," Omnibus Crime Control and Safe Streets Act of 1968, the pardoning governor's use of this language made Title VII inapplicable to plaintiff. See footnote 9, infra, and accompanying text. However, § 1203 does not apply to Title IV, of which § 922 is a part.

pardoned state conviction. He argues that a pardon blots out guilt and, thus, that defendants must disregard the earlier offense.

The Supreme Court, construing Article II, § 2 of the Constitution, the presidential power to pardon federal offenders, stated in Ex Parte Garland, 71 U.S. (4 Wall.) 333, 380, 18 L.Ed. 366 (1866):

> "A pardon reaches both the punishment prescribed for the offense and the guilt of the offender, and when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offense."[3]

Subsequent authorities have questioned the import of the broad language quoted above and considered it unnecessary to the Court's holding. See Richards v. United States, 89 U.S.App.D.C. 354, 192 F.2d 602, 607 (1951), cert. denied, 342 U.S. 946, 72 S.Ct. 560, 96 L.Ed. 703 (1952), reh. denied, 343 U.S. 921, 72 S. Ct. 676, 96 L.Ed. 1334. Williston, Does A Pardon Blot Out Guilt?, 28 Harv.L. Rev. 647 (1915). *Richards* held that a general pardon of all prior federal offenses for those serving in the armed forces during World War II did not preclude use of a pardoned conviction for impeachment purposes at a later federal trial.

Whatever the efficacy of a presidential pardon in removing the federal consequences of conviction, the issue here is the impact of a *state* pardon on a *federal* disability. In considering the effects in one sovereignty of pardons granted by another, the federal courts have exercised caution. In United States ex rel. Palermo v. Smith, 17 F.2d 534, 535 (2d Cir. 1927), the Second Circuit refused to treat an Italian pardon for crimes committed in Italy as blotting out guilt for purposes of United States immigration law. Similarly, the Supreme Court has

declined to require the states to accord the same consequences to a federal pardon as *Garland* suggests the federal government must. In Carlesi v. New York, 233 U.S. 51, 34 S.Ct. 576, 58 L.Ed. 843 (1914), the Court held that, despite a presidential pardon, New York could consider a prior federal conviction in applying its second offender statute. The Court noted that:

> "The issue is a narrow one and involves not the determination of the operation and effect of a pardon within the jurisdiction of the sovereignty granting it, but simply requires it to be decided how far a pardon granted as to an offense committed against the United States operates, so to speak, extraterritorially as a limitation upon the states, excluding them from considering the conviction of a prior and pardoned offense against the United States in a prosecution for a subsequent state offense." 233 U.S. at 57, 34 S.Ct. at 577.

The Court concluded, noting that the action of the state did not constitute punishment for the pardoned offense, that the federal pardon exerted no such "extraterritorial" effect. Conversely, these cases suggest that there is nothing inherent in a state pardon which compels the federal government to disregard the pardoned offense.

■ In his complaint, plaintiff characterizes the refusal to license him as a failure to give full faith and credit to the Montana pardon. Article IV, § 1 of the Constitution, concerning "public acts, records, and judicial proceedings," speaks only to the states. By statute federal courts must also accord full faith and credit to state legislative acts and judicial records and proceedings. 28 U. S.C. § 1738. However, it is open to question whether the full faith and credit clause extends to requiring a state

---

3. If Thrall's prior conviction were federal, and had he a presidential pardon, the Treasury's regulations would permit licensure. 26 C.F.R. § 178.142. Defendant's brief suggests that the Treasury considers this treatment constitutionally compelled. We express no opinion as to whether Article II, § 2 and *Garland* actually require that result.

court to treat a sister state's pardons as eradicating guilt for the purpose here involved, even *if the issuing state gives them that effect.* *Compare* People v. Dutton, 9 Cal.2d 505, 71 P.2d 218, appeal dismissed 302 U.S. 656, 58 S.Ct. 365, 82 L.Ed. 508 (1937); Groseclose v. Plummer, 106 F.2d 311, 313 (9th Cir. 1939), cert. denied, 308 U.S. 614, 60 S.Ct. 264, 84 L.Ed. 513, *with* People v. Terry, 61 Cal.2d 137, 37 Cal.Rptr. 605, 390 P.2d 381, 388–389, cert. denied, 379 U.S. 866, 85 S.Ct. 132, 13 L.Ed.2d 68 (1964). In any event, the Supreme Court has indicated that the choice of law requirements which Article IV, § 1 imposes depend on an analysis of the policies underlying conflicting laws. See generally Hughes v. Fetter, 341 U.S. 609, 71 S.Ct. 980, 95 L.Ed. 1212 (1951).

■ We conclude that, in imposing on convicted felons an otherwise appropriate disqualification from regulated activity,[3a] Congress has the power to accord a state pardon differing effects in differing contexts, depending on its objectives in creating the disqualification. Neither the inherent nature of a pardon nor full faith and credit require that a state pardon automatically relieve federal disabilities.[4]

## II.

■ The remaining issue is whether, in enacting Title VII of the Omnibus Crime Control and Safe Streets Act of 1968, Congress intended that one holding a state pardon no longer be regarded as convicted within the meaning of § 922(g) and (h). We cannot conclude that Congress desired a gubernatorial pardon to have this effect.

Section 925(c) provides:

"A person who has been convicted of a crime punishable by imprisonment for a term exceeding one year (other than a crime involving the use of a firearm or other weapon or a violation of this chapter or of the National Firearms Act) may make application to the Secretary for relief from the disabilities imposed . . . by reason of such conviction, and the Secretary may grant such relief if it is established to his satisfaction that the circumstances regarding conviction, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest."[5]

It is unlikely that Congress intended, in effect, to confer an even broader power on the 50 state governors, free of the standards and limitations placed on the Treasury Secretary. If a state pardon were an alternative to relief under § 925(c), the exception for crimes involving a firearm would have little vitality. Further, Congress would have to have assumed that a state pardoning authority would always make a satisfactory investigation of the individual's record and reputation to determine his propensity for future violence. Regarding the parallel provision[6] for relief from the prohibition in 18 U.S.C. § 842(i) against a felon's transporting explosives, it has been observed:

"Since Congress intended this determination to be made to the satisfaction of the Secretary, whose discretion is guided by federal policy, the scheme intended by Congress is disrupted if a state, guided by state policies, may make the determination to nullify a

---

3a. See United States v. Nasser, 476 F.2d 1111, 1117 (7th Cir. 1973).

4. The consequences of a pardon expressly based on a determination of innocence need not be determined here. See Richards v. United States, *supra,* at 606. Similarly, this case does not involve the effect of a judicial order in the convicting jurisdic-

tion setting aside the conviction. See United States v. Hoctor, 487 F.2d 270 (9th Cir. 1973). These situations entail considerations which could lead to a different conclusion.

5. Because his 1942 offense involved use of a pistol, Thrall is ineligible for this relief.

6. 18 U.S.C. § 845(b).

conviction for purposes of § 842(i)." United States v. Hoctor, 487 F.2d 270, 274 (9th Cir. 1973) (dissenting opinion).[7]

We have considered whether another section of Title IV, § 927, evinces an intention to give effect to state pardons. That provision states:

"No provision of this chapter shall be construed as indicating an intent on the part of Congress to occupy the field in which such provision operates to the exclusion of the law of any State on the same subject matter, unless there is a direct and positive conflict between such provision and the law of the State so that the two cannot be reconciled or consistently stand together."

The section was doubtless inserted for the purpose of avoiding a claim of preemption. 18 U.S.C. ch. 44 deals with federal control of firearms, not the scope and efficacy of pardons, and it is difficult to view Montana's pardon as "on the same subject matter" as chapter 44. See United States v. Hoctor, *supra*, at 274–275 (dissenting opinion). Further, absent an express contrary intention, the scope of a federal statute normally is not dependent on state law. See generally Jerome v. United States, 318 U.S. 101, 104, 63 S.Ct. 483, 87 L.Ed. 640 (1942). In McMullen v. United States, 349 F.Supp. 1348 (C.D.Cal. 1972), the court held that application of a state law permitting a judge to treat an offense, punishable as a felony, as a misdemeanor and impose a reduced penalty did not avoid the licensing prohibitions in § 923:

"We are dealing in this case with a federal licensing statute. We are governed, in interpreting that statute, by the terms employed by Congress as defined by the statute and the regulations under it. The only purpose in looking to state law in a case like the present one, is to determine the maximum penalty which could have been imposed. . . . The action taken under state law by the state Judge in disposing of the case does not change the nature and character of the offense insofar as its classification under the federal statutes and regulations concerned." 349 F.Supp. at 1351.

Where Congress did intend that a state pardon exempt an individual from a portion of the federal gun control laws, it had no difficulty expressing that intention. A separate title of the Omnibus Crime Control and Safe Streets Act of 1968, Title VII, provides punishment for any felon "who receives, possesses, or transports in commerce or affecting commerce" a firearm. 18 U.S.C. App. § 1202(a)(1). Section 1203(2) exempts "any person who has been pardoned by the President of the United States or the chief executive of a State and has expressly been authorized . . . to receive, possess, or transport in commerce a firearm."[8] Thus, in Title VII, Congress has provided that a state pardon will have the effect which plaintiff here seeks to attribute to it in Title IV.[9]

We think that the absence of any comparable provision in Title IV (and the presence there of a provision for limited administrative relief) signifies that

---

7. In *Hoctor*, the majority held that a state statute under which certain convictions are judicially expunged after satisfactory completion of probation relieved defendant of the disability in § 842(i). *Hoctor* may be distinguishable in that it involved a state court's judicially setting aside the original guilty verdict.

8. Under this section, plaintiff's pardon exempted him from Title VII.

9. We note two decisions which appear to assume, though not squarely to hold, that a state pardon would remove disability under Title IV as well as Title VII: United States v. Dameron, 460 F.2d 294 (5th Cir. 1972), cert. denied, 409 U.S. 882, 93 S.Ct. 168, 34 L.Ed.2d 137 and United States v. One Lot of Eighteen Firearms, 325 F.Supp. 1326 (D.N.H. 1971).

Congress did not intend that a state pardon affect the disabilities in that title. The existence of a section in Title VII giving force to a state pardon as to "This title" is no indication that Congress desired that result in Title IV. In United States v. Bass, 404 U.S. 336, 344, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971), the Court, in construing 18 U.S.C. App. § 1203(2), reviewed the legislative history of the Omnibus Crime Control and Safe Streets Act. The Court stated: "In our view, no conclusion can be drawn from Title IV concerning the correct interpretation of Title VII." The converse also appears to have validity. The two titles are of different, although overlapping, scope. In Title IV, Congress dealt, among other things, with the risks in allowing those convicted of serious crimes to ship or transport any firearm or ammunition in interstate or foreign commerce or to receive any firearm or ammunition which has been shipped or transported in such commerce or engage in business as a firearms or ammunition importer, manufacturer, or dealer, or be a collector. Title VII's subject matter is possession, receipt, or transportation in such commerce or affecting such commerce of a firearm.[10] The maximum penalties are different, with a longer period of imprisonment, though a lower fine, being authorized for most violations of Title IV than for violations of Title VII. Congress may have concluded that the dangers in the conduct covered by Title VII and not by Title IV were sufficiently smaller to justify giving effect to state pardons in Title VII, but not Title IV. Considering the Act as a whole, we cannot conclude that Congress intended that a gubernatorial pardon remove the disabilities imposed in § 922.

The judgment appealed from is reversed and the case is remanded to the district court for the entry of summary judgment for defendants.

10. See United States v. Bass, *supra*, at 350, 351.