**UNITED STATES of America**

v.

**Leonard Garland GREEN, Jr.**

**Crim. No. W–81–070.**

United States District Court,
D. Maryland.

May 29, 1981.

Herbert F. Better, Asst. U. S. Atty., Baltimore, for plaintiff.

Paul F. Kemp, Asst. Federal Public Defender, Baltimore, for defendant.

WATKINS, Senior District Judge.

Defendant was charged by way of a criminal indictment which stated in pertinent part:

On or about January 27, 1981 in the State and District of Maryland,

LEONARD GARLAND GREEN, JR.

having been convicted of a felony in the United States District Court for the Western District of Missouri, that is, attempted escape in violation of 18 U.S.C. § 751(a), knowingly possessed, received and transported in commerce and affecting commerce, a firearm, that is, a .36 caliber New Model Navy (6 shot) Euroarms Brescia, black powder percussion pistol, serial no. 013069.

The charge was brought pursuant to 18 U.S.C. App. § 1202(a) which provides that: [a]ny person who ... has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony ... and who receives, possesses or transports in commerce or affecting commerce, after the date of enactment of this Act [enacted June 19, 1968] any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

Defendant filed a motion to dismiss the indictment on the grounds that, simply stated, the weapon described in the indictment was not a "firearm" within the statutory meaning of the term. A hearing was held on this motion on April 15, 1981 and the Court denied the motion by an oral ruling from the bench. Because the question presented by defendant's motion appears to be one likely to recur as to charges brought under the statute in question, the Court writes separately to expand upon its oral ruling.

"Firearm," as the term is used in 18 U.S.C. App. § 1202(a) is defined as:

any weapon (including a starter gun) *which will or is designed to or may readily be converted to expel a projectile by the action of an explosive*; the frame or receiver of any such weapon; or any firearm muffler or firearm silencer; or any destructive device. *Such term shall include any handgun*, rifle or shot gun.

18 U.S.C. App. § 1202(c)(3) (emphasis supplied). The term "handgun" is further defined as:

any pistol or revolver originally designed to be fired by the use of a single hand and which is designed to fire or capable of firing fixed cartridge ammunition, or *any other firearm originally designed to be fired by the use of a single hand.*

18 U.S.C. App. § 1202(c)(5) (emphasis supplied). The terms "firearm" and "handgun" are not limited in any other way by the language of the act.

■ The weapon in question is, as the indictment charges, a ".36 caliber New Model Navy (6 shot) Euroarms Brescia, black powder percussion pistol, serial number 013069." Uncontradicted testimony from Special Agent Dennis Jones established that the weapon was designed to, and would in fact, expel a projectile by the action of an explosion, and further, that it was originally designed to be fired by the use of a single hand. It is thus undisputed

that the weapon is a "firearm" under the *literal* language of § 1202.

Defendant contends, however, that under the current and longstanding interpretation of 18 U.S.C. App. § 1201 *et seq.*, employed by the Bureau of Alcohol, Tobacco and Firearms, Department of Treasury (the Bureau), the weapon in question is not a firearm within § 1202. Testimony from Jack Patterson,[1] Assistant Chief Counsel for the Bureau, who works in the area of firearms and explosives, established that the Bureau is charged with the administration and enforcement of the several federal gun control acts, including Titles IV and VII of the Omnibus Crime Control and Safe Streets Act of 1968 (the Omnibus Act),[2] and that, accordingly, the Bureau is the expert agency with regard to the federal regulation of firearms. Mr. Patterson further testified that it is currently the official position of the Bureau that Title VII, 18 U.S.C. App. § 1201 *et seq.*, applies only to weapons which utilize rimfire or conventional centerfire fixed ammunition and that the title does not apply to any type of weapon which falls within the definition of "antique firearm" under Title IV, 18 U.S.C. § 921(a)(16) and which does not utilize fixed ammunition. This interpretation is applied uniformly to handguns, shotguns and rifles.

Defendant also introduced as exhibits six memoranda in the nature of "private letter rulings" which were issued by various officials in the Bureau during the period from 1970 through 1980. These memoranda demonstrate, and Mr. Patterson also testified, that over that ten year period the Bureau consistently interpreted 18 U.S.C. App. § 1201 to exclude from its coverage all Title IV "antique firearms" which do not utilize fixed ammunition.

Title IV of the Omnibus Act defines the term "firearm" as:

(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. *Such term does not include an antique firearm.*

18 U.S.C. § 921(a)(3) (emphasis supplied). The term "antique firearm" is further defined as:

(A) any firearm (including any firearm with a matchlock, flintlock, percussion cap, or similar type of ignition system) manufactured in or before 1898; and
(B) any replica of any firearm described in subparagraph (A) if such replica—
(i) is not designed or redesigned for using rimfire or conventional centerfire fixed ammunition, or (ii) uses rimfire or conventional centerfire fixed ammunition which is not readily available in the ordinary commercial trade.

18 U.S.C. § 921(a)(16).

Special Agent Dennis Jones testified at the hearing that the weapon in question is not capable of firing rimfire, or fixed cartridge, ammunition. Rather, the weapon's ignition system utilizes black powder, a lead ball and a percussion cap. Jones further testified that the weapon is a replica of an 1859 Remington model black powder and ball pistol. It is thus undisputed that the weapon falls within the definition of "antique firearm" under Title IV. Therefore, under the interpretation of Title VII employed by the Bureau, the weapon in question would not be considered a "firearm" within the coverage of Title VII, 18 U.S.C. App. § 1202(a). Defendant urged the Court to grant deference to the agency's interpretation of 18 U.S.C. App. § 1202(a) and to find that the indictment did not charge an offense under that statute.

1. Mr. Patterson was a candid, knowledgeable and helpful witness. While the Court does not agree with Mr. Patterson's opinion as to the construction of the statute in question, the Court appreciates his efforts to further the Bureau's efficient administration of Titles IV and VII.

2. Title VII of the Act is found at 18 U.S.C. App. § 1201 *et seq.* This title includes the statute under which charges were brought in the instant case. Title IV is found at 18 U.S.C. § 921 *et seq.*, and is also known as the Gun Control Act of 1968.

In order to resolve the issue raised by defendant's motion to dismiss the indictment, this Court must consider and give meaning to the statutory definitions of firearm and handgun found in Title VII, 18 U.S.C. App. § 1202(c)(3) and (5). Defendant offers the interpretation of that statutory section by the Bureau in furtherance of this purpose. As defendant correctly asserts, "[t]he construction put on a statute by the agency charged with administering it is entitled to deference by the courts, and ordinarily that construction will be affirmed if it has a 'reasonable basis in law.'" *Volkswagonwerk Aktiengsellschaft v. FMC*, 390 U.S. 261, 272, 88 S.Ct. 929, 935, 19 L.Ed.2d 1090 (1968); *United States v. Jackson*, 280 U.S. 183, 193, 50 S.Ct. 143, 146, 74 L.Ed. 361 (1930). Defendant argues that the construction adopted by the Bureau has a reasonable basis in law and therefore should be given deference by this Court.

■ It is important to note, however, that the Court is faced with a problem of statutory construction, and as the Supreme Court recently admonished in a decision construing a different section of this same title, "in any case concerning the interpretation of a statute the 'starting point' must be the language of the statute itself." *Lewis v. United States*, 445 U.S. 55, 60, 100 S.Ct. 915, 918, 63 L.Ed.2d 198 (1980) (construing 18 U.S.C. App. § 1201 *et seq.*). Accordingly, the corollary to the rule stated by the defendant is that "the courts are the final authorities on issues of statutory construction [citations omitted] and are not obligated to stand aside and rubber-stamp their affirmance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate a congressional policy underlying a statute." *Volkswagonwerk Aktiengesellschaft*, 390 U.S. at 272, 88 S.Ct. at 935.

■ In order for a court to grant deference[3] to an agency interpretation of a statute administered by the agency, the interpretation must be consistent with the congressional purpose. *Morton v. Ruiz*, 415 U.S. 199, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974); *Espinoza v. Farah Manufacturing Co.*, 414 U.S. 86, 94–95, 94 S.Ct. 334, 339, 38

---

**3.** Where deference is appropriate, the degree of deference granted will vary, based on such factors as the timing and consistency of the agency's position, and the nature of the agency's expertise. *Batterton v. Francis*, 432 U.S. 416, 425 n.9, 97 S.Ct. 2399, 2405 n.9, 53 L.Ed.2d 448 (1977). The Court takes notice that the agency in question has consistently applied the interpretation offered here over a ten-year period. The Court also acknowledges that the Bureau is the expert agency with regard to the enforcement of the statute in question.

The Court notes, however, that according to Mr. Patterson's testimony at the hearing, the Bureau's interpretation of the statute here in question has never been published in the Bulletin of the Bureau of Alcohol, Tobacco and Firearms, nor has any regulation setting forth this interpretation been published in the Federal Register. The Bureau's own regulations provide:

> ATF Rulings published in the Bulletin do not have the force and effect of Department of the Treasury Regulations . . . but are published to provide precedents to be used in the disposition of other cases, and may be cited and relied upon for that purpose. *No unpublished ruling or decision may be relied on, used or cited by any officer or employee of the Bureau as a precedent in the disposition of other cases.*

27 C.F.R. § 71.41(d)(2)(iii)(B) (emphasis supplied). Thus, the Bureau, under its own regulations, would accord little weight to the unpublished statements of the administrative interpretation offered here. It cannot be successfully urged here that the Court should give great deference to an agency's statements when the agency itself would not defer to those same statements.

Moreover, as Mr. Patterson testified, the Bureau has consistently recognized and advised inquirers that the interpretation at issue here is not free from doubt, given the statutory language of § 1202(c)(3) and (5). Indeed, there appears to be some internal dispute, or at least confusion, among the Bureau's officials as to the policy in question, as evidenced by one exhibit offered by defendant; that exhibit is an internal memorandum from Mr. Patterson to another Bureau official explaining that, contrary to the proposed ruling by the official, the Bureau's policy was not to apply the literal language of § 1202(c)(3) and (5) to a handgun similar to the one at issue in this case. The Court is of the opinion that, if the Court found it necessary to reach the question, these factors would weigh heavily against the Court's granting any significant degree of deference to the agency interpretation offered here.

L.Ed.2d 287 (1973). The Court concludes that the agency's interpretation is contrary to the clear intent of Congress with regard to the statutory provisions in question, as expressed by the plain language of the statute, and the Court therefore concludes that the agency interpretation is entitled to no deference whatsoever. *Espinoza*, 414 U.S. at 94–95, 94 S.Ct. at 339.

The Bureau recognizes, as the Court has noted previously, that its interpretation runs contrary to the plain language of the statute. The Bureau offers two rationales to support its interpretation in the face of the literal language of §§ 1202(c)(3) and (5). First, the Bureau contends that Congress did not intend to differentiate in treatment or breadth of coverage between handguns and other firearms under Title VII, and that because the definitions of rifle and shotgun cover only weapons which utilize some type of fixed cartridge ammunition, Congress also intended to limit the statute's coverage of handguns in the same manner. This reasoning completely ignores the fact that the plain language of the statute does in fact differentiate in scope of coverage between handguns and other types of firearms.[4] The Title VII definitions of both rifle[5] and shotgun[6] require that those types of firearms be capable of utilizing a certain type of fixed ammunition, while the Title VII definition of handgun includes not only handguns which utilize such fixed cartridge ammunition, but also "any other firearm originally designed to be fired by the use of a single hand." By the language which Congress employed in the definitions for both rifle and shotgun, Congress demonstrated that it knew how to limit the statute's coverage solely to weapons utilizing fixed ammunition; the fact that Congress used broader language in the companion definition of handgun therefore would reasonably suggest that Congress chose not to limit the scope of coverage for handguns in such a manner. Neither the Bureau nor the defendant offers any satisfactory explanation for the Bureau's conclusion as to the intent of Congress in the face of the literal language of the statute.[7] The only conclusion which the Court can draw in these circumstances is that Congress intended to restrict a broader range of handguns than of other firearms. Accordingly, the Court concludes that the Bureau's first rationale is without basis and provides no support for its interpretation of § 1202(c)(3) and (5).

As a second rationale for its position, the Bureau stresses the desirability of achieving uniformity of coverage between two similar gun control acts, Titles IV and VII. As this Court has explained, the two titles are indeed inconsistent in coverage; the dispute concerning the categorization of the weap-

---

4. This rationale also ignores the obvious distinction between long guns and handguns, i. e., the relative ease with which the latter may be concealed.

5. A "rifle" is defined in 18 U.S.C. App. § 1202(c)(7) as

a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed metallic cartridge to fire only a single projectile through a rifled bore for each single pull of the trigger.

6. A "shotgun" is defined in 18 U.S.C. App. § 1202(c)(6) as

a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of

ball shot or a single projectile for each single pull of the trigger.

7. While the Bureau offers no explanation for its conclusion as to Congress's intent in the face of the literal statutory language, the Bureau has taken the position in the memoranda submitted as exhibits here, that the sparse legislative history of Title VII does not support a finding that Congress intended to differentiate in the scope of coverage applicable to the different types of firearms. The Government correctly argues that the legislative history is at best ambiguous on this point. *See, e. g., United States v. Batchelder*, 442 U.S. 114, 120 n.6, 99 S.Ct. 2198, 2202 n.6, 60 L.Ed.2d 755 (1979) (discussion of relevant legislative history). Moreover, where the plain language of the statute establishes a different scope of coverage for handguns than for the other types of firearms, legislative history to the contrary would be essentially irrelevant. *See Barr v. United States*, 324 U.S. 83, 90, 65 S.Ct. 522, 525, 89 L.Ed. 765 (1954).

on in question highlights this inconsistency, for the weapon is covered under the literal language of Title VII but excluded from coverage under the literal language of Title IV. It is, however, well settled that Titles IV and VII, although redundant and overlapping in some provisions, are separate statutes, each of which is to be enforced on its own terms. *United States v. Batchelder,* 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979); *Thrall v. Wolfe,* 503 F.2d 313, 317 (7 Cir. 1974), *cert. denied,* 420 U.S. 972, 95 S.Ct. 1392, 43 L.Ed.2d 652 (1975).

In *Thrall v. Wolfe,* 503 F.2d 313, 317 (7 Cir. 1974), *cert. denied,* 420 U.S. 972, 95 S.Ct. 1392, 43 L.Ed.2d 652 (1975), the Seventh Circuit held that the method available to remove the disability which a felon faces under 18 U.S.C. § 921 was limited to the one specified in Title IV and did not include the additional methods provided in 18 U.S.C. App. § 1202 to remove a similar disability. The Seventh Circuit reviewed the two titles extensively and concluded that each was to be applied according to its own separate terms.[8] The Court considers *Thrall* to be both apposite and persuasive authority, applicable to the facts of this case; here, as in *Thrall,* a felon seeks to amend the unambiguous terms of one of these titles by adding additional terms from the other title. The Court finds the result reached by the *Thrall* court even more compelling on the facts here. In *Thrall* the requested construction would have worked only to supplement existing statutory provisions, while the construction suggested here would operate to repeal explicit statutory language found in Title VII by essentially deleting from the definition of "handgun" the words "or any other firearm originally designed to be fired by the use of a single hand."

Five years after the Seventh Circuit decided *Thrall,* the Supreme Court faced certain problems raised by the inconsistent language found in the two titles. In *United States v. Batchelder,* 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979), the Supreme Court considered whether the penalty terms of Title IV found at 18 U.S.C. § 924(a), were displaced by the shorter maximum sentences provided by Title VII, 18 U.S.C. App. § 1202(a), in the many cases where actions by particular classes of persons would violate both statutes. *Compare* 18 U.S.C. § 922(h) *with* 18 U.S.C. App. § 1202(a); *see United States v. Bass,* 404 U.S. 336, 341–43 and n.9, 92 S.Ct. 515, 519–20, 30 L.Ed.2d 488 (1971). The Supreme Court examined both the language of the statute and the legislative history and concluded:

> As we read the [Omnibus] Act, each substantive statute, in conjunction with its own sentencing provision, operates independently of the other.
>
> . . . .
>
> That Congress intended to enact two independent gun control statutes, each fully enforceable on its own terms, is confirmed by the legislative history of the Omnibus Act.

442 U.S. at 118, 119, 99 S.Ct. at 2201–02. The Court reversed the Fifth Circuit, stating:

> Respondent unquestionably violated § 922(h), and § 924(a) unquestionably permits five years' imprisonment for such a violation. That § 1202(a) provides different penalties for essentially the same conduct is no justification for taking liberties with unequivocal statutory language. See *Barrett v. United States,* 423 U.S. 212, 217 [96 S.Ct. 498, 501, 46 L.Ed.2d 45] (1976). By its express terms, § 1202(a) limits its penalty scheme exclusively to convictions obtained under that provision. Where, as here, "Congress has conveyed its purpose clearly, . . . we decline to

---

8. The Fifth Circuit reached the opposite conclusion three years later in *United States v. Matassini,* 565 F.2d 1297, 1311–12 and n.29 (5 Cir. 1978). The *Matassini* court conducted a careful review of the statutes and gave particular attention to the Seventh Circuit's reasoning in *Thrall,* but refused to find that the "strictures

against reasoning from Title VII to Title IV were indeed absolute." *Id.* at 1309 n.26. The Supreme Court reversed the Fifth Circuit on this point in *Batchelder,* 442 U.S. at 121, 99 S.Ct. at 2203, and this Court concludes that *Matassini* is no longer viable authority as to the construction of either title.

manufacture ambiguity where none exists." *United States v. Culbert*, [435 U.S. 371, 379, 98 S.Ct. 1112, 1116, 55 L.Ed.2d 349 (1978)].

*Id.* at 121–22, 99 S.Ct. at 2203.

■ This Court concludes that this reasoning is dispositive in the instant case.[9] It is undisputed that Title VII applies by its express terms to the handgun in question here. The *Batchelder* decision establishes that Titles VII and IV are to be enforced each according to its own terms. The Bureau's position that the weapon could not be covered by Title VII, despite that title's express language, because the weapon is not covered by Title IV, runs contrary to the Supreme Court's construction of the titles in question as two independent statutory schemes. Therefore, the Bureau's uniformity of coverage rationale is also not persuasive.

Defendant, departing from his reliance on the Bureau's interpretation, made one final argument which was, in effect, an attack on Title VII as a poorly drafted statute. He reminded this Court of the severe criticism which has been leveled at Title VII's drafting, compared with the praise directed toward Title IV, which has

been termed a model act. *See, e. g., United States v. Bass*, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971). Defendant argues that, given the relative merits of the two statutes, the definition of firearm found in Title IV should control. This argument neglects the important precept that the intent of Congress controls in a case of statutory construction. *See, e. g., Lewis v. United States*, 444 U.S. 55, 60, 100 S.Ct. 915, 918, 63 L.Ed.2d 198 (1980). It is significant that despite the years of criticism of Title VII, Congress has not modified that title. More importantly, the Supreme Court, author of much of the criticism referenced above, has held that Title VII and Title IV are to be applied each according to its terms. *Batchelder*, 442 U.S. at 121, 99 S.Ct. at 2203. This holding is entirely inconsistent with defendant's argument that the generally better-drafted statute should control in cases of inconsistent language.[10] Finally, the Court notes that whatever the ambiguities which otherwise exist in Title VII, the language of 18 U.S.C. App. § 1202(c)(5) is clear and not susceptible to more than one meaning. Therefore, defendant's final argument based on the generally poor drafting of Title VII is not persuasive as to the question of construction presented here.

9. The Supreme Court also considered in *Batchelder* whether the passage of Title VII subsequent to the enactment of Title IV worked an implied repeal of Title IV's penalty terms to the extent that these were inconsistent with those prescribed under Title VII. The Court rejected this contention, applying the familiar principle that legislative intent to repeal must be manifest in the " 'positive repugnancy between the provisions.' " *Batchelder*, 442 U.S. at 122, 99 S.Ct. at 2204, *quoting United States v. Borden Co.*, 308 U.S. 188, 199, 60 S.Ct. 182, 188, 84 L.Ed. 181 (1939). The Supreme Court found in *Batchelder* that the penalty provisions of the two titles were fully capable of coexisting, because they applied to convictions under different statutes. *Id.*

The doctrine of implied repeal is not implicated in the instant case. Here the requested construction would engraft the definition of an *earlier*-enacted statute onto the unambiguous provisions of a *later*-enacted statute, by amending Title VII's definition of handgun to include Title IV's exclusion of "antique firearms." Because of this chronology, neither defendant nor the Bureau relies on the doctrine of implied repeal to support the requested construction.

10. The Supreme Court rejected a similar argument to the one made here by defendant in *United States v. Bass*, 404 U.S. 336, 341–43, 92 S.Ct. 515, 519–20, 30 L.Ed.2d 488 (1971) stating:

[C]ircumstances surrounding the passage of Title VII make plain that Title VII was not carefully molded to complement Title IV. Title VII was a last-minute Senate amendment to the Omnibus Crime Control and Safe Streets Act. The Amendment was hastily passed, with little discussion, no hearings, and no report. [Footnote omitted.] The notion that it was enacted to dovetail neatly with Title IV rests perhaps on a conception of the model legislative process; but we cannot pretend that all statutes are model statutes. While courts should interpret a statute with an eye to the surrounding statutory landscape and an ear for harmonizing potentially discordant provisions, these guiding principles are not substitutes for congressional law making. In our view, no conclusion can be drawn from Title IV concerning the correct interpretation of Title VII.

The Court concludes that the Bureau's interpretation of the statute in question is inconsistent with the plain statutory language and with Congress's intent as expressed therein. Consequently, while the Bureau may have been delegated sufficient prosecutorial discretion to permit its selective enforcement of Title VII according to its stated policy, the Court finds that the Bureau's interpretation or construction of Title VII is entitled to no deference by this Court in construing the statute. Rather, the plain language of the statute controls. Under that language, the weapon in question is undisputably both a "firearm" and a "handgun." Defendant's motion to dismiss the indictment was accordingly denied.