912 F.2d 466
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ronald FRANKLIN and Willie Rucker, Defendants-Appellants.
 Nos. 89-6268, 89-6305.
 United States Court of Appeals, Sixth Circuit.
 Aug. 27, 1990.
 
 Before KRUPANSKY and BOGGS, Circuit Judges, and JOINER, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Defendants Ronald Franklin and Willie Rucker appeal their jury convictions for possession of 42.6 grams of crack with intent to distribute, in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2. On appeal, they assert a number of errors. Both defendants contend that the district court erroneously used its own special verdict form over a form submitted by defendants' counsel, and that insufficient evidence exists to support their convictions.
 
 
 2
 Franklin argues that his initial stop and search violated the fourth amendment, as did the subsequent search of an apartment. He also states that the distinction in 21 U.S.C. Sec. 841(b) between cocaine base and cocaine salts for the purpose of sentencing violates the equal protection clause of the Constitution and should be void for vagueness. Rucker argues that the district court erred in refusing to admit the affidavit of a witness Rucker claimed was unavailable. He also asserts that, given his youth, the length of the sentence given him pursuant to the Sentencing Guidelines violates the eighth amendment. Finding no merit in the assignments of error, we affirm.
 
 
 3
 * On January 10, 1989, officers of the Memphis Police Department responded to a call regarding a possible burglary in progress at an apartment complex. At the apartment identified by the caller as the site of the burglary, the officers knocked at the door without response. The officers saw no signs of forced entry, and thus returned to their cars and prepared to leave the scene.
 
 
 4
 As they were leaving, the officers were approached by a resident of the apartment complex, who claimed that intruders were inside the apartment previously investigated and also identified a car in the parking lot in which these intruders had arrived. Upon hearing the resident's statement, one of the officers glanced toward the window of the apartment and saw someone quickly close the curtains. The officers checked the intruders' car's identification number, and determined that it was stolen. Some of the officers then surrounded the building, while the rest proceeded back to the apartment.
 
 
 5
 Upon arriving back at the apartment, the officers saw Franklin coming out of the apartment. He turned toward some of the officers, saw them, and turned and walked in the opposite direction. The officers stopped him and patted him down. The searching officer testified that, during this patdown, a rock of crack, rolled in a tube or paper, fell out of Franklin's pocket. None of the other parties involved in this patdown indicated that the crack had fallen from Franklin's pocket. The officers then arrested Franklin.
 
 
 6
 Franklin had left the door of the apartment partially open, and the officers entered. The officers examined the apartment, and discovered baking soda, a mirror, and a razor blade covered with white residue in the kitchen. The kitchen stove was on. Officer Dwight Woods found a number of football team jackets lying in a pile in the back bedroom. Five persons, some of them juveniles, were in the back bedroom, near the jackets. At least two persons were lying on the floor near the jackets, but Rucker was standing. These five persons were taken outside the apartment, searched, and patted down.
 
 
 7
 One juvenile in the apartment at time of the officers' entry testified for the government at trial that Franklin "was fixing to start" cooking some crack, but that he had not actually started cooking. The juvenile said that he had flushed some crack down the toilet before the police arrived, and that other persons in the apartment had also tried to get rid of some crack.
 
 
 8
 The juvenile indicated that there had been some discussion among all the persons in the apartment about distributing the crack. Another juvenile in the apartment at the time of the police officers' entry, who was also a government witness, testified that he and Franklin had discussed distributing crack, but that no one else had talked about distributing it.
 
 
 9
 Thirty-nine grams of crack were found in the underwear of one of the juveniles, crack which Franklin had apparently told him to hide. One of the jackets, a San Francisco Forty-Niner jacket, was found to contain crack in one pocket. According to one of the juveniles, when the police arrived, Franklin ran to the bedroom, and put a plastic bag containing twenty-five rocks of crack in the Forty-Niner jacket. Rucker had apparently seen Franklin previously place the rocks into the bag, but it is not clear whether he saw Franklin place the bag in the jacket.
 
 
 10
 Officer Woods also found some crack lying beside the jackets. Woods gathered the crack found by the jackets and put it in the pocket of the Forty-Niner jacket. The weight of the crack in the pocket, which apparently included both the crack originally in the jacket pocket and that put there by Officer Woods, was 3.6 grams. The jackets were taken outside, to be "claimed" by the persons in the apartment. Willie Rucker claimed the Forty-Niner jacket. Franklin did not claim a jacket.
 
 
 11
 On January 17, 1989, Franklin and Rucker were indicted by a grand jury in the Western District of Tennessee for aiding and abetting the possession of 42.6 grams of cocaine base with the intent to distribute, in violation of 21 U.S.C. Sec. 841(a) and 18 U.S.C. Sec. 2.
 
 
 12
 On March 17, 1989, Franklin filed a motion to suppress the crack seized from him, which motion was heard before a magistrate on April 13. The magistrate recommended that the motion to suppress be denied on June 9, and Franklin entered his objections on June 16. On June 22, 1989, the court denied the motion. A trial began on June 20, 1989. At the close of the government's proof, Franklin moved for acquittal, which was denied.
 
 
 13
 At trial, Rucker's counsel produced another Forty-Niner jacket, which allegedly had been taken from Rucker's closet at his apartment after his arrest by his girlfriend, Katie Hill. Hill had given the jacket to Rucker's counsel and completed an affidavit describing the circumstances of her discovery of the jacket. Hill, however, did not appear at trial, and apparently could not be located. Rucker attempted to admit the affidavit into evidence as an affidavit of an unavailable witness. The government objected and the trial court refused to admit the evidence, stating that it was not relevant.
 
 
 14
 Under 21 U.S.C. Sec. 841(b)(1)(B)(iii), a person convicted of the possession of "5 grams or more of a mixture of substance described in clause (ii) [a coca leaf-derived mixture] which contains cocaine base" with the intent to distribute must receive a sentence of not less than five years. Accordingly, the jury had to decide whether Franklin or Rucker possessed more than 5 grams of crack, a form of cocaine base, with the intent to distribute.
 
 
 15
 On June 22, the defendants submitted a special verdict form to answer this question. This form read:
 
 
 16
 [The defendant] is _______ of possession of one "rock" of "crack" cocaine on January 10, 1989.
 
 
 17
 [The defendant] is _______ of possession with intent to distribute of 3.6 grams of "crack" cocaine, found in a jacket, on January 10, 1989.
 
 
 18
 [The defendant] is _______ of possession with intent to distribute of 39 grams of "crack" cocaine, found [in the underwear of one of the juveniles], on January 10, 1989.
 
 
 19
 The court rejected this form in favor of its own form. In respect to its form, the court instructed the jury:
 
 
 20
 If your finding is that the defendant is guilty of possession of cocaine base with intent to distribute, you must then go on and make a finding as to whether the amount of cocaine base was more or less than five grams, and that is listed just as the next question on this verdict form: "If you find defendant guilty of possession of cocaine base with intent to distribute, was the amount of cocaine base more or less than five grams," and the lines are, "more than five grams," or "less than five grams," and mark whichever one is appropriate.
 
 
 21
 Franklin's counsel indicated that "as an alternative for what I had already submitted," the court's form was "fine." Rucker's counsel voiced no objection to the court's special verdict form.
 
 
 22
 While deliberating, the jury asked: "Does the possession of over five grams of cocaine automatically bring a charge of intent to sell." The court answered the question:
 
 
 23
 Although I have told you that there is no particular quantity required to establish the offense of possession of cocaine base with intent to distribute, you can, of course, consider the quantity in determining whether or not the defendant had specific intent to distribute, and you may consider the quantity along with all the other evidence in the case that would pertain to that issue, but there is no particular significance to five grams that relates to the determination of whether the defendant is guilty or not guilty.
 
 
 24
 The jury returned a verdict of guilty as to both defendants. The jury also made a special finding that the defendants were each in possession of more than 5 grams of cocaine base.
 
 
 25
 On August 17, Franklin filed a response to the presentence report, a motion to declare the Anti-Drug Abuse Act of 1986 void for vagueness, and a motion to declare the Act unconstitutional for disproportionate sentencing. The court denied these motions. The court sentenced Franklin to a term of 108 months and Rucker to a term of 135 months under the Guidelines. Both sentences were to be followed by a 4-year term of supervised release. Rucker did not object to the sentence imposed. Both appealed.
 
 II
 
 26
 The magistrate found that the police had legally stopped and frisked Franklin when he was coming out of an apartment they suspected had been burglarized. The magistrate further found that there were sufficient exigent circumstances for the police to make a warrantless entry and search of the apartment. The district court upheld the magistrate's report. Franklin attacks both the magistrate's determinations on appeal.
 
 
 27
 * Franklin contends that the police lacked a reasonable articulable suspicion to stop him after he walked out of the apartment. He further argues that Terry v. Ohio, 392 U.S. 1 (1968), authorizes only a patdown for weapons after a stop, but not for other substances. Since the tiny rock of crack could not have felt like a weapon, it was outside the scope of items that may be seized pursuant to a Terry stop, and thus should have been suppressed at trial.
 
 
 28
 We agree that the officers had a reasonable articulable suspicion justifying their initial stop and frisk of Franklin: the burglary report, the resident's statement that intruders were still in the apartment, the identification of the intruders' vehicle as stolen, and Franklin's emergence from the apartment in question and the evasive manner in which he acted.
 
 
 29
 The searching officer testified that, during this lawful stop and frisk, a rock of crack, wrapped in either paper or a tube, fell from Franklin's pocket. In this regard, we believe that the officer's seizure of the rock of crack fell within the "plain view" doctrine. See Texas v. Brown, 460 U.S. 730 (1983). The District of Columbia Circuit upheld the seizure of a bag of cocaine protruding from the pocket of an individual, on the ground that the bag of cocaine came into the "plain view" of police as the individual stepped from his car pursuant to an officer's lawful request to do so. United States v. Castellanos, 731 F.2d 979, 984 (D.C.Cir.1984). Similarly, we believe that when the rock of crack fell from Franklin's pocket during the lawful frisk, it came within the "plain view" of the police officer, and was properly seized.
 
 
 30
 Even if the rock had not fallen from Franklin's pocket, we believe that it would "inevitably" have been discovered in a search incident to a lawful arrest, and, accordingly, the district court did not err in refusing to suppress it. United States v. Romero, 692 F.2d 699, 704 (10th Cir.1982).
 
 
 31
 As discussed in subsection B of this section, the officers made a justifiable warrantless entry into the apartment based on the report of the burglary in progress, regardless of whether drugs were found on Franklin. Since Franklin had recently emerged from the apartment, he would certainly have been detained during this entry. See United States v. Moore, 817 F.2d 1105, 1106-07 (4th Cir.), cert. denied, 484 U.S. 965 (1987).
 
 
 32
 Upon entering the apartment, the police officers found, as they would have on any entry, indicia of cocaine activity in plain view in the kitchen, such as baking soda, a mirror, a razor blade covered with white residue, and a lit kitchen stove. All these items relate to the production of cocaine products, and, being in plain view, could be seized. See United States v. Moore, 790 F.2d 13, 15-16 (1st Cir.1986). These items would have given the police probable cause to place the occupants of the apartment, including Franklin, under arrest. See Texas v. Brown, 460 U.S. 730, 742-43 (1983) (plurality opinion) (probable cause for warrantless arrest may arise from items in plain view that are known to be connected with drugs). Franklin then could have been searched incident to arrest. New York v. Belton, 453 U.S. 454, 461 (1981). This lawful search incident to arrest would have uncovered the rock of crack in Franklin's pocket. See United States v. Robinson, 414 U.S. 218, 229 (1973).
 
 B
 
 33
 Franklin argues that, even if his search and the subsequent seizure of crack was proper, the subsequently warrantless entry into and search of the apartment violated the fourth amendment. In particular, Franklin notes that the police had surrounded the apartment building, and it was therefore impossible for the occupants to flee. Thus, Franklin argues that exigent circumstances, such as those outlined in United States v. Henry, 878 F.2d 937, 941 (6th Cir.1989), did not exist, and the warrantless search was improper.
 
 
 34
 We find Franklin's citation to Henry unpersuasive in this context. Henry concerned the particular exigent circumstance created by a potential fleeing suspect. Franklin is correct that the possibility of flight was minimal here. However, the officers did have an objectively reasonable basis to believe that narcotics might be destroyed, and, in this respect, exigent circumstances justifying a warrantless search existed. See United States v. Sangineto-Miranda, 859 F.2d 1501, 1512 (6th Cir.1988); United States v. Adamo, 742 F.2d 927, 948 (6th Cir.1984).
 
 
 35
 The officers had a reasonable basis to believe that other persons were in the apartment, based on the testimony of the resident of the apartment complex, that these other persons might be possessing drugs, based on the fact that drugs were found on Franklin, and that these other persons might soon become aware that the police were on their trail, based on the fact that a person looked outside the window. Thus, the officers concluded, the occupants of the apartment might destroy the drugs in the apartment. United States v. Socey, 846 F.2d 1444 (D.C.Cir.1988). Indeed, the officers' beliefs concerning destruction of evidence proved to be well-founded, in light of one of the juvenile's testimony that some crack had already been flushed down the toilet.
 
 
 36
 In any event, the officers had a reasonable basis to believe that a burglary was in progress in the apartment, regardless of any evidence of drugs they found on Franklin. One of the residents of the complex reported the burglary and identified the apartment, the intruders' vehicle was identified as stolen, the occupants looked out the window but did not answer the door, and Franklin emerged from the apartment, acting in an evasive manner. We hold that these facts gave the officers probable cause to suspect that a burglary was in progress and provided exigent circumstances to justify their warrantless entry into the apartment. See Reardon v. Wroan, 811 F.2d 1025, 1029-30 (7th Cir.1987).
 
 III
 
 37
 Katie Hill apparently provided Rucker's counsel with an affidavit alleging her discovery of a Forty-Niner jacket in Rucker's closet. Hill was not present at trial. Although Rucker attempted to introduce her affidavit under Rule 804, Fed.R.Evid., which provides for admission of an affidavit of an unavailable witness, the court refused to allow the affidavit to be admitted. The district court found that the affidavit was neither admissible nor relevant.
 
 
 38
 Before an affidavit may be admitted under Rule 804, the proponent of the statement in the affidavit must demonstrate that the affiant
 
 
 39
 is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance ... by process or other reasonable means.
 
 
 40
 Rule 804(a)(5), Fed.R.Civ.P. Although Rucker contends that he subpoenaed Hill, and that she did not to comply, the record does not indicate that Rucker ever attempted to locate Hill and serve her with a subpoena, or that a subpoena was ever issued for her. No witnesses were presented as to why Hill was unavailable for testimony.
 
 
 41
 Even if Hill was an unavailable witness under Rule 804(a), Rucker has not objected to the district court's ruling that her affidavit was not relevant. Accordingly, we hold that the district court did not abuse its discretion in refusing to admit Hill's affidavit under Rule 804(a).
 
 IV
 
 42
 Both defendants contend that the trial court erred when it rejected their special verdict form and used its own form. In particular, the defendants assert that the court's distinction between more than five grams of cocaine base and less than five grams (a distinction important for sentencing under 21 U.S.C. Sec. 841(b)(1)(B)(iii)) confused the jury, which had only heard cocaine base discussed in terms of 3.6 grams (the amount found in the Forty-Niner jacket) and 39 grams (the amount found in the underwear of one of the juveniles).
 
 
 43
 As an initial matter, we note that the defendants failed to object to the verdict form at trial, and, in the case of Franklin, explicitly approved the form. Under these circumstances, we review the form only for plain error. See United States v. Southard, 700 F.2d 1, 15 (1st Cir.1983). We do not find that the form constitutes plain error.
 
 
 44
 Even if the defendants had objected, we still see no error in the special verdict form. We do not believe that the distinction it draws between weights under five grams and those over five grams is unduly confusing to the jury. This distinction is set forth at 21 U.S.C. Sec. 841(b)(1)(B)(iii), and is a determination necessary for sentencing under this statute. The form as used by the court accurately reflects the provisions of this statute. Furthermore, the form certainly does not conflict with or contradict the evidence presented at trial. Accordingly, we find no error in the special verdict form given by the court. See United States v. Pforzheimer, 826 F.2d 200, 206 (2d Cir.1987).
 
 V
 
 45
 On appeal, both defendants contend that there is insufficient evidence to support their convictions. Since each offers a different argument in support of the claim, we will address them separately.
 
 
 46
 * Franklin contends that the testimony of accomplices, especially when contradictory, should be viewed with suspicion. United States v. McGhee, 882 F.2d 1095 (6th Cir.1989). He points to the apparently conflicting testimony of the two juveniles at trial. Franklin further argues that their testimony is not supported by corroborating evidence.
 
 
 47
 One juvenile stated that Franklin had started to cook some cocaine, but had not yet cooked any; the other juvenile, however, stated that Franklin had succeeded in cooking the crack, and that the crack found on this juvenile was this crack. The juveniles also apparently gave conflicting statements as to the movements and activities of the persons in the apartment. Both juveniles, however, indicated that Franklin aided and abetted the planned distribution of the crack. Viewing the evidence presented in the light most favorable to the government, we are unable to say that the district court erred in denying Franklin's motion for acquittal.
 
 B
 
 48
 Rucker contends that the only evidence connecting him with the crack in his presence in the apartment and his claiming the Forty-Niner jacket that contained crack. Rucker points to testimony of one of the juveniles that the crack found in the Forty-Niner jacket had been placed there by Franklin. However, the testimony of one of the juveniles clearly indicated that all persons in the apartment, including Rucker, were involved in the plan to distribute the crack and that all persons were involved in the destruction of the crack prior to the arrival of the police.
 
 
 49
 One juvenile indicated that Rucker was not involved in this plan. However, this juvenile was a friend of Rucker, and made this friendship known to the jury when he waved at Rucker as he entered the courtroom to testify. It was within the province of the jury to resolve any conflicts between the testimony, and to make any credibility determinations necessary. Thus, sufficient evidence exists to support Franklin's conviction.
 
 
 50
 It is of no consequence to Rucker's conviction that the crack found in the Forty-Niner jacket may have been placed there by Franklin, or that Rucker did not place the crack in the underwear of one of the juveniles. Sufficient evidence was presented to indicate that Rucker was aiding and abetting the planned distribution of the crack, regardless of where any specific amounts of crack were eventually found.
 
 VI
 
 51
 The Anti-Drug Abuse Act of 1986 amended Title 21 of the United States Code to provide greater penalties for possession of cocaine base (one form of which is crack) with the intent to distribute than the penalties for possessing a corresponding amount of cocaine salts (cocaine hydrochloride) with the intent to distribute. Compare 21 U.S.C. Sec. 841(b)(1)(A)(ii) and 21 U.S.C. Sec. 841(b)(1)(A)(iii); 21 U.S.C. Sec. 841(b)(1)(B)(ii) and 21 U.S.C. Sec. 841(b)(1)(B)(iii). On appeal, Franklin presents two constitutional attacks on the Act.
 
 
 52
 * Franklin argues that 21 U.S.C. Sec. 841(b), to the extent it requires enhanced penalties for possession of cocaine base, should be held to be void for vagueness, since a coca leaf-derived mixture may contain both cocaine base and cocaine salts, and the base and salts may be visually indistinguishable. He further notes that the term "cocaine base" is not defined in the relevant statutes, 21 U.S.C. Secs. 841(b)(1)(A)(iii) and 841(b)(1)(B)(iii).
 
 
 53
 Franklin thus argues that 21 U.S.C. Sec. 841(b), as it relates to these enhanced penalties, violates the due process clause, because it does not define a criminal offense, in this case possession of cocaine base, with sufficient clarity so that ordinary persons will know what behavior is proscribed. Kolender v. Lawson, 461 U.S. 352 (1983). Further, the statute does not provide sufficient guidance to either law enforcement personnel or the judiciary in enforcing the statute. Id.; Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 340 (1952).
 
 
 54
 We disagree. Franklin bears the burden of proving that the term "cocaine base," as set forth in 21 U.S.C. Sec. 841(b), is vague as to his case. Many circuit courts have held that the definition of "cocaine base" includes crack. United States v. Avant, No. 89-6223, slip op. at 7 (6th Cir. July 11, 1990); United States v. Williams, 876 F.2d 1521 (11th Cir.1989); United States v. Ryan, 866 F.2d 604, 609 (3rd Cir.1989); United States v. Brown, 859 F.2d 974, 976 (D.C.Cir.1988); United States v. Collando-Gomez, 834 F.2d 280, 281 (2d Cir.1987). This case law adequately refutes any contention that 21 U.S.C. Sec. 841(b) is vague on the question of whether "cocaine base" includes crack.
 
 
 55
 We thus find it clear that Franklin knew, or should have known, that crack is considered to be "cocaine base" under 21 U.S.C. Secs. 841(b)(1)(A)(iii) and 841(b)(1)(B)(iii). We also find no merit in Franklin's argument that the Anti-Drug Abuse Act amendments to Title 21 lead to arbitrary sentencing, since Franklin has not pointed to any case where a defendant was incorrectly sentenced for possession with the intent to distribute of cocaine base instead of cocaine salts.
 
 B
 
 56
 Franklin also asserts that the distinction drawn in 21 U.S.C. Sec. 841(b) between cocaine base and cocaine salts for sentencing purposes is not grounded in a legitimate legal or factual distinction between the two, and thus constitutes disproportionate sentencing. We disagree.
 
 
 57
 Since the distinction drawn between cocaine base and cocaine salts does not discriminate on the basis of a suspect classification or the exercise of a fundamental right, we must simply determine whether it is rationally related to a legitimate governmental interest. United States v. Solomon, 848 F.2d 156 (11th Cir.1988). Congress clearly perceived crack to be a more pressing problem than cocaine salts, in part because drug dealers could sell quantities of crack that were smaller yet more potent than cocaine, and escape more severe penalties because of the smaller amounts involved. See 132 Cong.Rec. 8091 (1986). We hold that the Anti-Drug Abuse Act of 1986 bears a rational relation to the legitimate governmental interest of impeding the sale of crack, because it brings the penalties for possession of crack with the intent to distribute into line with crack's enhanced pharmacological effects.
 
 VII
 
 58
 Rucker was 19 years of age at the time of sentencing, and received an approximately 11-year sentence. He contends on appeal that the length of this sentence, in light of his age, violates the eight amendment. Rucker argues that enactment of the Federal Sentencing Guidelines constituted a retreat from Congress's and the court's prior concern with the special problems entailed in sentencing young adults. See Youth Offenders Act, 18 U.S.C. Sec. 5001, et seq.; Dorszynski v. United States, 418 U.S. 424, 433 (1974). We find no merit in Rucker's argument.
 
 
 59
 Rucker did not argue at trial and does not argue now that the Sentencing Guidelines are inapplicable to him or that his sentence was incorrectly calculated under the Guidelines. Thus, he has no basis on which to appeal the calculation of his sentence. United States v. Draper, 888 F.2d 1100 (6th Cir.1989). In any event, there is no constitutional impediment to sentencing a 19-year-old as an adult. Cf. Stanford v. Kentucky, 109 S.Ct. 2969 (1989) (not unconstitutional to impose capital punishment on 16 or 17-year-olds). We also see no constitutional violation in the length of sentence imposed, in light of other decisions of this court. See, e.g., Young v. Miller, 883 F.2d 1276 (6th Cir.1989) (life imprisonment without parole for first conviction of possession of heroin with intent to deliver did not constitute cruel and unusual punishment). Accordingly, we affirm the sentence imposed on Rucker.
 
 VIII
 
 60
 For the foregoing reasons, the decision of the district court is AFFIRMED in all respects.
 
 
 
 *
 The Honorable Charles W. Joiner, Senior United States District Judge for the Eastern District of Michigan, sitting by designation